**HARRIS COUNTY, Texas, Appellant,**

v.

**Cheryl NORRIS, Appellee.**

**No. 01–04–01087–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 9, 2006.

Rehearing Overruled Dec. 7, 2006.

Bruce S. Powers, Jay S. Siskind, Assistant County Atty's, Houston, for Appellant.

Edward J. Hennessy, Randall D. Wilkins, Hennessey, Gardner & Barth, Iain Gordon Simpson, Houston, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

In this wrongful termination suit, a jury found that Harris County, Texas ("the County") wrongfully terminated appellant, Cheryl Norris, after she attempted to report abuse of a child to her supervisor. In three related issues, the County argues that (1) the trial court erred in denying its motion for directed verdict, (2) there was legally insufficient evidence to support the jury's finding that Norris's report of abuse was made in good faith and was a cause of the County's decision to terminate her when it did, and (3) the trial court erred in denying the County's motion for judgment notwithstanding the verdict. Norris brings a cross-point in which she contends that the trial court erred in denying reinstatement. We affirm.

## Background

On November 12, 2002, Norris, a caseworker with the Harris County Juvenile Probation Department, was stationed at the Burnett–Bayland Reception Center ("BBRC"). She testified that her supervisor, Melissa Watson, requested that she investigate a possible incident involving G.G., one of the juvenile residents at BBRC that had occurred during the intake procedure. Norris had twice attempted to contact Antonio Valle, the supervisor on duty at the time of the alleged incident, but he told her that he did not have time to discuss it, but would discuss it later. Valle told Norris that there were no reports of the incident. When Norris told Watson that there were no reports, Watson instructed her to talk to G.G. G.G., who was initially reluctant to speak with Norris,[1] ultimately told her that, during the intake process, he had sat down, con-

---

1. Norris testified that G.G. "told [her] that he    made a deal and he couldn't tell [her]."

trary to instructions given by the guard, because he was feeling sick. The guard lifted G.G.'s arms up behind his back in a police hold until he was forced to stand on his tiptoes, then took him into the hallway and "slammed" him on the ground five or six times. G.G. was then moved to seclusion in handcuffs and shackles. After G.G. asked to speak to a supervisor, Valle came into the room. Valle told G.G. that, if G.G. did not write a grievance concerning the matter, Valle would not need to write a report saying that G.G. assaulted a staff member. Norris testified that G.G. "knew that was a threat to keep him [in detention] longer and he just wanted to go home. . . . He was scared he was going to have to stay longer if he reported it so he didn't."

While she was talking with G.G., Norris saw Watson walk by. She asked her to "Come here, I want you to hear this first hand, it's bad." G.G. proceeded to relay the "slamming" and the threat that had taken place. Watson told Norris to get statements and to see if there were any witnesses. Norris testified that, while she was taking the statements of G.G. and another resident in BBRC, Valle "showed up" and told her that "we are going to take over the investigation." The discussion between Valle and Norris was confrontational, and Valle testified that Norris be-

came "argumentative" and "refused to follow an administrative directive."

Valle testified that statements from residents must be collected by a supervisor like himself or Watson; therefore, it was improper for Norris to be taking statements.[2] Norris, on the other hand, told Valle that he should not be involved in investigating an incident in which he was implicated. Norris asked Valle to page Watson, her immediate supervisor, but Valle did not know the number, and he refused to get the number from his office.

Valle asked Norris for the reports that she had collected on the incident, and Norris refused to give him the reports. Valle ultimately notified the police to investigate the alleged abuse of G.G.[3]

The next day, Valle reported Norris's refusal to comply with his administrative directives to the superintendent of the BBRC, Terry Snow. Statements were taken from all involved, and, one week later, Norris was terminated because of the "Valle incident." Norris sued the County pursuant to the Texas Whistleblower Act[4] and alternatively pursuant to Texas Family Code section 261.110, alleging that she was terminated for attempting to report abuse of a child to her supervisor. At the conclusion of trial, the jury was asked several jury questions including

2. BBRE had a written policy of requiring staff to fill out an "Exception Report" for any serious incidents involving aggressive or violent behavior by a resident and incidents requiring physical or mechanical restraint. The report was required to be completed before the end of the shift in which the incident occurred, and the caseworker was to be informed.

3. The Harris County Juvenile Probation Department also had a written policy requiring all allegations of abuse or neglect as defined in section 261.001 of the Family Code be reported within 24 hours to the Texas Juve-

nile Probation Commission. Any employer informed of an allegation was required to report it to a supervisor such as Valle or Watson. If the supervisor was "involved in any way in the incident," the policy required that the superintendent or a designee appoint an investigator.

4. The Whistleblower Act claim was dropped at trial. The Family Code prohibits bringing causes of action under both the Family Code and Chapter 554 of the Government Code—"The Whistleblower Act." *See* TEX. FAM.CODE ANN. § 261.110(*l*) (Vernon 2002).

QUESTION NUMBER 1

Was Cheryl Norris's report of abuse, if any, made in good faith and a cause of Harris County's terminating Cheryl Norris when it did?

"Good faith" means that (1) Cheryl Norris believed that the conduct reported was a violation of law, and (2) her belief was reasonable in light of her training and experience.

Answer "Yes" or "No."

Answer: (Yes)

If your answer to Question 1 is "Yes," then answer the following question. Otherwise do not answer the following question.

QUESTION NUMBER 2

Do you find from a preponderance of the evidence that Harris County would have terminated Cheryl Norris when it did even if she had not made a report of a possible violation of law?

Answer "Yes" or "No."

Answer: (No)

The jury also found that Norris sustained actual damages of $202,000, and the parties stipulated to attorneys' fees in the sum of $15,000. The trial court denied the County's motion for directed verdict and judgment notwithstanding the verdict ("JNOV").

## No Evidence

In three related issues, the County argues that (1) the trial court erred in denying its motion for directed verdict, (2) there was legally insufficient evidence to support the jury's finding that Norris's report of abuse was made in good faith and was a cause of the County's decision to terminate her when it did, and (3) the trial court erred in denying the County's motion for JNOV.

## Standard of Review

A trial court may "disregard any jury finding on a question that has no support in the evidence" and render a judgment notwithstanding a jury's verdict "if a directed verdict would have been proper." TEX.R. CIV. P. 301. In regard to the County's no-evidence issues, we note that, when a party without the burden of proof challenges the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998); *Ned v. E.J. Turner & Co.*, 11 S.W.3d 407, 408 (Tex. App.-Houston [1st Dist.] 2000, pet. denied). If there is more than a scintilla of evidence to support the challenged finding, we must uphold it. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (*quoting Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)). However, if the evidence supplies some reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact, then there is legally sufficient evidence. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003). The traditional scope of review does not disregard contrary evidence if there is no favorable evidence, or if contrary evidence renders supporting evidence incompetent or conclusively establishes the opposite. *City of Keller v. Wilson*, 168 S.W.3d 802, 810–11 (Tex.2005). Evidence can be disregarded whenever reasonable jurors could do so, an inquiry that is necessarily fact-specific. *Id.* at 811.

## Directed Verdict

█ In issue one, the County argues that the trial court erred in denying its motion for directed verdict.

By statute, professionals are required to report suspected acts of child abuse or neglect. TEX. FAM.CODE ANN. § 261.101(b)(Vernon 2002). Section 261.110(b) of the Texas Family Code provides that an employer may not terminate the employment of a person who is a professional and who in good faith reports child abuse to the person's supervisor. TEX. FAM.CODE ANN. § 261.110(b) (Vernon 2002). The statute does not define the term "reports child abuse." A public employee who alleges a violation of Section 261.110 may sue the employing state or local governmental entity for relief provided for in the section, and sovereign immunity is waived to the extent of liability created by the section. TEX. FAM.CODE ANN. § 261.110(f) (Vernon 2002). The employee has the burden of proof, except that there is a rebuttable presumption that the employment was terminated for reporting abuse if the termination occurs before the 61st day after the date on which the employee made a report in good faith. *See* TEX. FAM.CODE ANN. § 26.110(i) (Vernon 2002).

The County filed a written Motion for a Directed Verdict and also argued its motion to the trial court. During the hearing, the County contended that "in this case there's been no evidence that the plaintiff made a report of child abuse to the supervisor or any other entities listed in the statute.... The report was made by the juvenile to the supervisor, not by the plaintiff and, so we submit there's no evidence of making a report." The County continued that "the evidence does not meet the causation standard here since the—it's essentially a but-for type causation." On appeal, the County argues that, because Norris did not disclose information tending to directly or circumstantially prove the substance of an allegation of abuse, she did not fall within the protection of Section 261.110. "She simply told her supervisor that she should hear a juvenile's story first hand and the juvenile then self-reported the alleged abuse directly to the supervisor." The County also contends that there is no evidence showing a causal connection between the making of any report of child abuse and the termination of Norris's employment.

It is undisputed that no report, however the term is defined, was generated before Norris confronted G.G. about the incident, which had taken place one week before. It is also undisputed that, after Norris spoke with G.G. and later called Watson over to hear the first-hand account of the incident, several reports were created. The purpose of the statute is to protect children from abuse by protecting an employee who reports child abuse; therefore, a liberal interpretation of the report requirement is necessary in order to achieve the purpose of the statute. *See Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex.2002) (in construing statute, objective is to determine and give effect to Legislature's intent). Furthermore, because Norris was fired within 61 days after she made a report in good faith, the County had the burden of rebutting the presumption that Norris was terminated for reporting abuse. *See* TEX. FAM.CODE ANN. § 261.110(i). To prevail on a directed verdict, the County must have proven, as a matter of law, that it conclusively established that Norris was fired for non-retaliatory reasons. It failed to do so. In fact, Valle, who reported Norris for her refusal to comply with administrative directives, was asked at trial if Norris was fired for reporting abuse, and he testified, "I don't know, sir."

We hold that the evidence supplies some reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact and thus presents legally sufficient evidence to defeat a motion for directed verdict. *See Chapman,* 118 S.W.3d at 751.

We overrule issue one.

### JNOV and Legal Sufficiency

In issues two and three, the County argues that (1) there was legally insufficient evidence to support the jury's finding that Norris's report of abuse was made in good faith and was a cause of the County's decision to terminate her when it did and (2) the trial court erred in denying the County's motion for judgment notwithstanding the verdict.

The County filed a Motion to Disregard Jury Findings or Alternatively Motion for JNOV. In the motions, the County contends that there was no evidentiary support for the jury's answers in the charge because there was "no probative evidence that Cheryl Norris made any report in accordance with Chapter 261 of the Texas Family Code." The County further argues that, because the pleadings allege that Norris "**attempted** to make a report and **initiate** an investigation of child abuse as opposed to making a report," the question should not have been submitted to the jury.

The County did not ask for a definition of "report" to be included in the charge, and it did not ask for a separate question regarding whether Norris actually made a report as a predicate to the liability question. We must assume that, because the jury affirmatively answered the liability question, it made an implied finding that Norris filed a "report."

The parties agree on the basic facts of the case. They simply disagree whether Norris's motioning to Watson and G.G.'s recitation of the events to Watson constituted "a report of abuse." Absent an instruction in the charge defining the term, we cannot usurp its implied finding. The County also contends that there "is no evidence showing a causal connection between the making of any report of child abuse and the termination of the Plaintiff's employment."[5]

Norris unequivocally testified that she reported or caused to be reported the incident of abuse. The jury refused to find "from a preponderance of the evidence that Harris County would have terminated Cheryl Norris when it did even if she had not made a report of a possible violation of law." Norris was not required to prove that the filing of the report was the only cause of her termination. In fact, she simply needed to defeat the above-quoted statement. Once she created a fact question, it was the County's burden to prove from a preponderance of the evidence that Norris's alleged insubordination was the sole cause of her termination. It failed to do so.

In the statement she prepared and filed at the time of the incident, Norris relayed the events surrounding her alleged insubordination. She stated that Valle demanded that she give him the statements that she had taken from the juveniles who witnessed the incident with G.G. She stated that she responded,

"Sir, as soon as we call [Watson] or copy them, I'll give them to you." He said, "So you're refusing me, a Supervisor." I said, "Sir, I'm not refusing, I'm asking if we can call my Supervisor before we

---

5. The jury was not instructed on the Family Code's rebuttable presumption on causation. TEX. FAM.CODE ANN. § 261.110(i) (rebuttable presumption employee fired due to report if fired within 61 days of report).

take any action." He said "I'm going to ask you again," and did. I repeated my request to call [Watson] first please. He said, "Okay, so you've refused a Supervisor twice."

Norris's statement goes on to reflect that, after Valle left the room, Norris attempted to page Watson, and then Norris attempted to make the copies of the statements. The copier was on "energy saver mode," so she could not make copies immediately. Valle returned while Norris was waiting to make copies, and Watson responded to the page. While Valle was listening to her conversation with Watson, Norris relayed over the phone the events of the evening. Watson "sounded surprised" and told Norris "to tell Valle that she had instructed [Norris] to get the kids' statements." Valle refused to talk with Watson on a speaker phone. Norris made copies of the statements, gave them to Valle, and left the building. When specifically asked at trial, Valle was uncertain if Norris was fired for reporting abuse. Norris contends that she was fired for reporting the abuse and that the alleged "insubordination" was the result of an easily explained attempt to contact her supervisor while conducting an investigation.

We hold that there is more than a scintilla of evidence to support the challenged finding and, accordingly, overrule issues two and three. *See Formosa Plastics Corp. USA,* 960 S.W.2d at 48.

### Reinstatement

In her sole cross point, Norris contends that the trial court erred "in denying her reinstatement to her former position or a comparable position in terms of compensation, benefits, and other conditions of employment and reinstatement of fringe benefits and seniority rights lost because of her wrongful termination."

 Texas Rule of Appellate Procedure 25.1(c) requires that a party "who seeks to alter the trial court's judgment or appealable order must file a notice of appeal." TEX.R.APP. P. 25.1(c); *Helton v. Railroad, Comm'n of Texas,* 126 S.W.3d 111, 119 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). Harris County filed its notice of appeal on October 13, 2004, and Norris's notice of appeal was due within 14 days thereafter. *See* TEX.R.APP. P. 26.1(d). Norris's notice of appeal was not filed until December 13, 2004. Accordingly, we dismiss her appeal for being untimely filed.

### Conclusion

We affirm the trial court's judgment.