**Opinion issued July 16, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00797-CV

———————————

## DOREATHA WALKER, Appellant

## V.

## HITCHCOCK INDEPENDENT SCHOOL DISTRICT, Appellee

On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Case No. 09-CV-1439

## MEMORANDUM OPINION

Appellant Doreatha Walker sued the Hitchcock Independent School District for suspending her and recommending termination from her job as Head Start Director. She contended that the District had retaliated against her for reporting

unsafe mold levels and other improprieties. The jury found that Walker had not made those reports in good faith or that the reports were not the cause of her suspension and recommendation of termination. The trial court entered judgment in favor of the school district.

On appeal, Walker alleges that the trial court erroneously charged the jury, improperly admitted evidence, incorrectly applied the res judicata doctrine, and unfairly imposed time limits during the trial. She also complains that her directed verdict motion was improperly denied, and she challenges the sufficiency of the evidence to support the judgment. Finally, Walker questions the composition and conduct of the jury. We affirm the trial court's judgment.

**Background**

Doreatha Walker was hired as Head Start Director on a one-year probationary contract. In February 2009, several months into her tenure and after concerns were raised about high levels of mold in the Head Start building, District Superintendent Dr. Michael Bergman held a meeting with Head Start staff and parents to clarify the progress that had been made on addressing the mold problem. A few days later, Walker filed a workers' compensation form indicating she would be going on leave for mold-related health reasons. She also filed a grievance against Bergman for allegedly yelling at her during the meeting, although no one present at the meeting remembered his doing so.

2

For the rest of February and most of March, Walker was absent on medical leave. Although absent, she continued to email Bergman and Head Start board members about the mold issue and her fear of losing her job in retaliation for reporting the issue. In early March, days before her contract was eligible for renewal, she threatened Bergman with a wrongful termination suit if the board did not vote to extend her employment as Head Start director. Despite concerns that Walker was not getting along well with Head Start board members and District personnel, Bergman recommended Walker's employment be extended for another year. The next day Walker rescinded her grievance against Bergman.

A few weeks later, Walker attempted to return to work at the Head Start building. However, Bergman had directed her not to return to work because her medical leave form stated that she could not yet return to the Head Start building, which was the only place she could perform her duties as director. When Walker nevertheless arrived on campus, an assistant superintendent directed her to leave on Bergman's instructions. Walker refused to obey the directive, the police were called, and she was escorted off the campus. After the incident, Walker informed Bergman that she felt the removal from campus was in retaliation for her raising the mold issue and again threatened to file suit if anyone attempted to fire her. Bergman responded by warning Walker that further unprofessional and

3

insubordinate conduct would result in a recommendation that her contract be terminated.

Walker's relations with Head Start board members and staff deteriorated throughout the following month. Rather than heed Bergman's earlier advice to listen to others and to cooperate with Head Start board members, Walker acted imperiously and took control of a Head Start board meeting—a meeting which she attended only at the invitation of board members. The next day the president of the Head Start policy board declared her refusal to attend any future meetings with Walker. Then, after a meeting during which Walker verbally accosted her, the Head Start staff administrative assistant filed a harassment grievance against her. Subsequently, the secretary of the Head Start policy board, a parent volunteer, resigned, followed by the early retirement of the Head Start nurse a few weeks later. Each expressed frustration with Walker as the reason for leaving.

Soon thereafter, on May 1, Bergman suspended Walker by placing her on administrative leave with pay. He was concerned about her failure to obey directives, her insubordination, and the grievances and resignations of Head Start volunteers and staff. Two days later, Walker filed a report with the Texas Education Agency alleging the District was claiming Head Start students for reimbursement of transportation services that the District never provided. After a District board meeting at which Bergman failed to recommend that the board

4

renew her contract, Walker filed another grievance against Bergman. She alleged that Bergman had retaliated against her for making whistleblower reports about the alleged violations of transportation reimbursement rules and her mold complaints.

Three months later, the District board accepted Bergman's recommendation to terminate Walker's contract. Walker appealed the termination to the TEA. After a hearing, the TEA hearing examiner agreed with the District's proposed termination, documenting Walker's failure to follow directives, disrespect for authority, and imperious tone with superiors, subordinates, and parent volunteers. Thereafter, the District board officially terminated Walker. The Texas Commissioner of Education upheld the termination.

After the board agreed to terminate her contract, Walker filed suit against the District. She represented herself at all stages of the trial court proceedings. She alleged that her May 1 suspension violated the Texas Whistleblower Act, TEX. GOV'T CODE ANN. §§ 554.001–.010 (West 2012). She alleged that Bergman violated the Whistleblower Act because he had suspended her for complaining to the local, state, and federal health agencies about the mold in the Head Start building and for her allegations that the District had improperly claimed Head Start students for state transportation reimbursement.

The trial court determined that the findings of the TEA hearing examiner and the education commissioner from the termination appeal could be used in

Walker's whistleblower suit. After a ten-day trial, two questions were submitted to the jury. Question One asked whether Walker's report of possible improprieties in how the District sought reimbursement for transportation was made in good faith and was a cause for Bergman's recommendation that she be terminated. Question Two asked whether Walker's reports of mold to health agencies were made in good faith and were a cause of her suspension with pay. The jury answered "No" to both questions, and the trial court entered judgment in favor of the District. Walker then filed this appeal.

**Analysis**

Pro se litigants must comply with all applicable laws and rules of procedures, and they are held to the same standards as are licensed attorneys. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Kanow v. Brownshadel*, 691 S.W.2d 804, 806 (Tex. App.—Houston [1st Dist.] 1985, no writ). A pro se litigant is required to properly present her case on appeal, and we do not make allowances or apply different standards for litigants appearing without the advice of counsel. *See Morris v. Am. Home Mortg. Servicing, Inc.*, 360 S.W.3d 32, 36 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The Rules of Appellate Procedure require appellate briefs to contain clear and concise arguments with appropriate citations to the record and supporting authorities. TEX. R. APP. P.

38.1(i). Nevertheless we construe briefs liberally, and substantial compliance with the rules is sufficient. *See* TEX. R. APP. P. 38.9.

In her brief, Walker raises 29 points of error. Many of these lack supporting authority or citations to the record. Other points refer to hundreds or thousands of pages from the record, which does not substantially comply with the briefing rules. *See Saldana v. Garcia*, 285 S.W.2d 197, 200–01 (Tex. 1955) (holding that it is not the duty of the courts of appeals to independently search a voluminous record to find evidence in support of a theory); *Labrador Oil Co. v. Norton Drilling Co.*, 1 S.W.3d 795, 803 (Tex. App.—Amarillo 1999, no pet.). Many of the points of error are duplicative or incapable of being distinguished from other points of error. But construing Walker's brief liberally, we discern seven main issues. Walker complains of (1) error in the jury charge, (2) incorrect application of the res judicata doctrine, (3) improper admission of evidence, (4) unfair time limits imposed during the trial, (5) denial of her directed verdict motion, (6) the sufficiency of the evidence to support the judgment, and (7) the composition and conduct of the jury.

## I.     Jury charge

Walker challenges the jury charge and instructions. She argues that the jury should have had more instructions about the causation element of her whistleblower claim, including a specific instruction that an incorrect but good

faith belief that a law was violated is sufficient for a whistleblower claim. She also argues that the instruction for actual damages should have used her preferred wording, and that the damages questions should have included an option for the jury to award injunctive relief reinstating her to her former position.

We review a trial court's decision to submit or refuse a particular jury instruction for abuse of discretion. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). The trial court has considerable discretion to determine proper instructions. *Id.* An appellate court will not reverse a judgment for charge error unless that error "probably caused the rendition of an improper judgment" or "probably prevented the petitioner from properly presenting the case to the appellate courts." *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012) (citing TEX. R. APP. P. 44.1(a)). When the findings of the jury are sufficient to support the judgment, error in omitting an issue is harmless. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). The trial court should refuse to submit unnecessary instructions even if they represent correct statements of the law. *Rigdon Marine Corp. v. Roberts*, 270 S.W.3d 220, 228 (Tex. App.—Texarkana 2008, pet. denied); *Riggs v. Sentry Ins.*, 821 S.W.2d 701, 704–05 (Tex. App.—Houston [14th Dist.] 1991, writ denied).

### a.      Liability questions

To prove a claim under the Whistleblower Act, a public employee must demonstrate that she reported a violation of law in good faith and that the adverse

8

employment action by the employer would not have occurred had the report not been made. *City of Houston v. Levingston*, 221 S.W.3d 204, 226 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000)); *see also* TEX. GOV'T CODE ANN. §§ 554.002, 554.004 (West 2012) (requiring good faith report to authorities and placing burden of proof on public-employee plaintiff). To meet the causation requirement, the employee is not required to show that her reports of illegal conduct were the sole reason for the employer's adverse action. *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 634 (Tex. 1995). Instead, she must present some evidence that "but for" her reports, the employer's suspension or termination would not have occurred when it did. *Id.* at 636; *see also Zimlich*, 29 S.W.3d at 68.

In this case the trial court submitted two Whistleblower Act questions based on the Texas Pattern Jury Charge. The questions asked the jury if Walker's reports to the authorities were made in good faith and were a cause of her suspension and the recommendation of termination.[1] Walker requested an alternate charge that

---

[1] Specifically, Question One stated:

Was Doreatha Walker's report to the Texas Education Agency ("TEA") on May 3, 2009, in which she accused the District of improperly reporting Head Start students to the State to gain additional transportation funding, made in good faith and a cause of Dr. Michael Bergman's statements to the Board of Trustees at the May 19, 2009 Board meeting?

included slightly different wording, left out the good-faith element in the mold-report question, and omitted the good-faith instruction.[2]  However, Walker does not explain how the questions that were in the charge were incorrect or resulted in the rendition of an improper judgment.  *See Shupe*, 192 S.W.3d at 579–80 (explaining how even improper instructions are harmless when there are answers sufficient to support the judgment).

---

Question Two stated:

> Were Doreatha Walker's reports to the Galveston County Health Department, the Texas Department of State Health, and the Environmental Protection Agency in February 2009 regarding the presence of mold in the Kids First Head Start Building made in good faith and a cause of her suspension on May 1, 2009?

Both questions included this instruction about "good faith":

> "Good faith" means that (1) Doreatha Walker believed that the conduct reported was a violation of law, and (2) her belief was reasonable in light of her training and experience.

[2]  Walker's proposed jury charge questions were:

> 1. Was Doreatha Walker's report to the (TEA) on May 3, 2009, in which she accused the District of improperly reporting Head Start students to the State to gain additional transportation funding, made in good faith and a cause of Dr. Michael Bergman's statements to the Board of Trustees at the May 19, 2009 Board meeting?

> 2. Were the reports of mold to the Galveston County Health Department, Texas Department of State Health and Environmental Protection Agency the cause of Walker's suspension on May 1, 2009?

The trial court acted within its discretion. The broad-form charge used in this case is appropriate for whistleblower cases. *See Zimlich*, 29 S.W.3d at 68, 71 (upholding a jury verdict using a broad-form submission). The charge includes the good-faith and causation elements, while Walker's proposed question on her report about mold lacked the good-faith element required by the Whistleblower Act. *See* TEX. GOV'T CODE ANN. § 554.002; *Levingston*, 221 S.W.3d at 226. Her mold question also unnecessarily required that she establish that the mold reports were "the" cause of her suspension, rather than merely "a" cause. *See Hinds*, 904 S.W.2d at 634–36 (holding that the employee is not required to prove making a report was the sole cause of the employer's adverse action). Thus, the trial court did not abuse its discretion in not adopting Walker's proposed charge.

For the first time on appeal, Walker also complains that the submitted charge was incorrect because it omitted additional instructions on causation and definitions from the Whistleblower Act. Preservation of the issue of an omitted instruction, however, requires that the appellant tender a written request to the trial court for submission of the instruction that is "in substantially correct wording." *See* TEX. R. CIV. P. 278; *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002); *see also* TEX. R. APP. P. 33.1(a) (preserving a complaint for appellate review requires the complaint be made to the trial court). Because Walker did not

11

submit a request for these additional instructions or definitions to the trial court, she has failed to preserve her complaint for appellate review.

### b.    Damages question

Walker next complains that the damages section of the jury charge did not include an option for reinstatement and misstated the proper standard for actual damages. These complaints fail to demonstrate harm, because any alleged error with respect to damages did not affect the rendition of the judgment against Walker when the jury did not find in her favor for liability. *See Thota*, 366 S.W.3d at 686–87; *Shupe*, 192 S.W.3d at 579–80; *see also City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995) (noting an improper question is immaterial and harmless when the answer cannot alter the effect of a verdict). Walker also cannot complain of the actual-damages measure because the trial court adopted her proposed measure of damages. *See* TEX. R. CIV. P. 274 (requiring a party disputing the charge to point out distinctly the objectionable matter for each part of the charge the party objects to); *In re A.V.*, 113 S.W.3d 355, 362–63 (Tex. 2003).

For the foregoing reasons, we overrule Walker's points of error 1, 2, 11–14, 17, 19, and 23.

## II.    Collateral estoppel

Walker alleges that the District was allowed to use material from her administrative proceedings while she was not and that this was an improper

application of the res judicata and collateral estoppel doctrines.[3]  Before trial, Walker had appealed her termination in administrative proceedings before a TEA hearing examiner and commissioner of education.  Under the doctrine of collateral estoppel, the trial court allowed the parties to present the findings from the administrative hearing, but not to dispute those findings.  In the administrative action, it was found that Walker had increasingly poor relations with her superiors and other adults involved in the Head Start program in the months before her suspension.  The hearing examiner found that Walker's policies and behavior violated several of her job requirements and described several incidents in which her attitude led to conflict, such as when she refused to leave the Head Start building and had to be escorted away by police.  From these findings, the examiner concluded that the District was authorized to terminate her probationary contract.

---

[3]  In point of error 3, Walker claims the trial court abused its discretion because "it allowed Hitchcock ISD to create a new 'Affirmative Defense' during the Trial to ambush and prejudice Mrs. Walker."  The new affirmative defense was "when they told the Jury Plaintiff did not identify a law being violated," and she objected.  She has not identified where in the record the District made this argument or where the trial court allowed it to be presented.  Instead she cited the entire thirteen-volume record.  As we cannot find where in the record an allegedly improper act occurred, we overrule plaintiff's point of error 3 for failure to provide appropriate record citations.  *See* TEX. R. APP. P. 38.1(i); *Saldana v. Garcia*, 285 S.W.2d 197, 200–01 (Tex. 1955) (explaining that the appellate courts are not required to search through voluminous records to find the parties' citations for them).

Collateral estoppel, also known as issue preclusion, prevents relitigation of particular issues already resolved in a prior suit. *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). A party asserting collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action. *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002); *Houtex Ready Mix Concrete & Materials v. Eagle Constr. & Envtl. Servs., L.P.*, 226 S.W.3d 514, 519 (Tex. App.—Houston [1st Dist.] 2006, no pet.). To invoke collateral estoppel on the basis of a prior administrative order, a party must show the administrative agency was acting in a judicial capacity and had jurisdiction to resolve the disputed issues of fact, which the parties had an adequate opportunity to litigate. *In re Edwards Aquifer Auth.*, 217 S.W.3d 581, 588 (Tex. App.—San Antonio 2006, no pet.).

The TEA has jurisdiction over an educator's disputed employment contract, as the agency has jurisdiction over disputes involving any person aggrieved by the actions of any board of education. *Muckelroy v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 831 (Tex. App.—Dallas 1994, writ denied). Since the agency issued a final decision after Walker and the District had an adequate opportunity to fully and fairly litigate her termination, the hearing examiner's findings were binding on

14

the trial court. *See id.*; *see also Mullinax v. Texarkana Indep. Sch. Dist.*, 252 F.3d 1356 (5th Cir. 2001) (TEA hearing examiner's findings made in judicial capacity entitled to preclusive effect).

The hearing examiner found that Walker was validly terminated due to her "intransigence, duplicity, and defiance of authority" in almost every conflict between her and District employees. The examiner catalogued the numerous disputes and incidents that took place in the spring of 2009 which preceded Walker's suspension and termination. The course of these events was relevant to the District's argument that Walker's insubordination, not her whistleblowing, was the cause of her suspension and ultimate termination. Because the issue of why she was terminated was fully and fairly litigated in the administrative proceeding, the District was entitled to the preclusive effect of those findings. Walker does not indicate where in the record that the District did anything more than reference the examiner's findings, as it was entitled to do. Because she attempted to dispute the administrative findings, however, the trial court acted properly in stopping her from relitigating the issue of why she was terminated. Thus, the trial court did not err in its application of the collateral estoppel doctrine.

Accordingly, we overrule Walker's points of error 3, 5, 15, and 29.[4]

---

[4] In point of error 29, Walker claims the trial court abused its discretion because "it allowed Hitchcock ISD to bring up things . . . denied in their Motion for Limine." She offers no argument to support this allegation and

## III. Evidentiary rulings

Walker challenges several of the trial court's evidentiary rulings. She complains that the court refused to admit a newspaper article about mold in the Head Start building, and that it admitted several email messages offered by the District over her hearsay objection.

The inclusion and exclusion of evidence is committed to the trial court's sound discretion. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). The party seeking to reverse a judgment based on evidentiary error must prove that the error probably resulted in an improper judgment, usually by showing that the judgment turns on the particular evidence excluded or admitted. *Id.*; *City of Brownsville*, 897 S.W.2d at 753–54. We review the entire record to determine whether the complaining party has demonstrated that the judgment turns on the particular evidence admitted. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007).

With respect to the news reports unsuccessfully offered into evidence by Walker, newspaper articles that are offered to prove the truth of what the article is reporting are inadmissible hearsay. TEX. R. EVID. 801(d); *Deramus v. Thornton*,

---

provides no citations for guidance beyond this bare assertion. As we cannot find where in the record an allegedly improper act occurred, we overrule plaintiff's point of error 29 for failure to reference authority or the record. *See* TEX. R. APP. P. 38.1(i).

333 S.W.2d 824, 831 (Tex. 1960). Walker offered them to prove that there was mold in the Head Start building—an inadmissible hearsay purpose. TEX. R. EVID. 802. Because the articles were inadmissible hearsay, the trial court did not abuse its discretion in refusing their admission. The newspaper articles in question were also duplicative of facts in evidence. They show only that there was mold in the Head Start building, which was an undisputed fact in this case.

Walker complains that the trial court admitted several email messages to which she objected. The messages were reports from several people involved in the Head Start program which included complaints about Walker's argumentativeness and strange behavior. The trial court did not err in admitting these messages because they were offered to prove that Bergman received reports of the contentiousness and conflict caused by Walker's management of the Head Start program. *See, e.g.*, *In re Bexar Cnty. Criminal Dist. Attorney's Office*, 224 S.W.3d 182, 188–89 (Tex. 2007) (statements are admissible if offered for their effect on the listener rather than the truth of the matter asserted).

Walker also complains that the trial court prevented her from pursuing a line of questioning into the District's alleged past retaliation against other employees. The trial court sustained the District's objection because the alleged retaliation was not related to Walker's whistleblower claims. Walker does not indicate how this

17

testimony would have altered the judgment in the case and we find any possible error to be harmless.

Because the trial court did not err in admitting or excluding the evidence it did, and in any case no harm has been shown, we overrule Walker's points of error 6, 7, 16, and 20.

## IV. Time limits on questioning

Walker complains that the trial court admonished her to speed up the presentation of her case, imposed time limits on the trial length, and shortened her time for questioning witnesses and presenting her deposition testimony. The trial court has great discretion in the conduct of the trial. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001). A trial judge is afforded the discretion to express himself while controlling the trial. *Bott v. Bott*, 962 S.W.2d 626, 631 (Tex. App.—Houston [14th Dist.] 1997, no pet.). A trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time. *Francis*, 46 S.W.3d at 241; *Hoggett v. Brown*, 971 S.W.2d 472, 495 (Tex. App.—Houston [14th Dist.] 1997, pet. denied); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163 (1936) (a trial court has the inherent power to control the disposition of cases with economy of time and effort for itself, for counsel, and for litigants).

18

The trial court in this case acted within its authority in managing the trial's time limits. The trial court often attempted to help Walker by encouraging her to speed up her questioning to keep the jury's interest. The trial judge warned her that the trial was taking longer than anticipated and that he might have to impose time limits. When the trial court did begin to impose time limits, it was to the detriment of the District's time for presenting its case in chief, not Walker's. Walker spent a vastly larger portion of the trial's length questioning witnesses than the District did. Critically, Walker identifies no particular instance when she was prevented from finishing an important line of questions or she was unable to present important evidence due to a time limit imposed by the trial court.

Accordingly, we overrule points of error 8 and 24 to 27.

## V.     Denial of Walker's request for directed verdict

Walker complains that the trial court denied her motion for a directed verdict. Specifically, she argues that she should have had the opportunity to orally argue her motion, which was an opportunity afforded to the defendant but not to her.

The record does not reflect that Walker was denied an opportunity to argue her motion. The District was permitted to argue its motion for directed verdict orally, but Walker submitted a written argument in support of her motion, so she did not need the opportunity to make an additional oral argument. *See Dillard v.*

19

*Broyles*, 633 S.W.2d 636, 645 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.) (Texas Rule of Civil Procedure 268 only requires specificity in directed verdict motions, and this can be met with an oral or written argument). She also did not object to the trial court about her argument being transmitted in writing rather than orally. *See* TEX. R. APP. P. 33.1.

We overrule Walker's points of error 4, 9, and 10.

## VI. Sufficiency of the evidence

Walker argues the evidence was not legally and factually sufficient to support the jury verdict. In reviewing a verdict for legal sufficiency, we "must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). If there is more than a scintilla of evidence to support the challenged finding, we must uphold it. *Harris Cnty. v. Norris*, 240 S.W.3d 255, 258 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)). In reviewing a factual sufficiency complaint, we must first examine all of the evidence. *Lofton v. Tex. Brine Corp.*, 720 S.W.2d 804, 805 (Tex. 1986); *Airgas-Sw., Inc. v. IWS Gas & Supply of Tex., Ltd.*, 390 S.W.3d 472, 478 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). After considering and weighing all the

evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Marine Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Airgas-Sw.*, 390 S.W.3d at 478. The jurors are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. *City of Keller*, 168 S.W.3d at 819.

To prove a claim under the Whistleblower Act, an employee must prove by a preponderance of the evidence that the retaliatory conduct by the employer would not have occurred when it did if the employee had not reported the violation of law. *Zimlich*, 29 S.W.3d at 67. There is a rebuttable presumption that the report of a law violation caused the employee's termination or suspension if the termination or suspension occurs no later than 90 days after the report. TEX. GOV'T CODE ANN. § 554.004(a). If the employer presents positive evidence to rebut the presumption that the adverse employment action was due to the report, then the presumption of a causal connection between the report and termination or suspension is disregarded. *Tex. A&M Univ. v. Chambers*, 31 S.W.3d 780, 784 (Tex. App.—Austin 2000, pet. denied). Then the employee must produce evidence to support the contention that reporting the violation of law caused the employer to retaliate. *Zimlich*, 29 S.W.3d at 68.

The District presented ample evidence to rebut the presumption that Walker was suspended and recommended for termination because she filed reports of safety and funding violations. In addition to numerous emails and letters describing Walker's poor working relationship with others associated with the Head Start program, numerous witnesses testified that she instigated conflict and problems as Head Start director. The jurors were able to weigh Bergman's testimony that he had not suspended Walker or recommended termination due to her filing the reports. *See City of Keller*, 168 S.W.3d at 819. The findings of the administrative hearing examiner attested to the same problems with Walker's conduct. There was also evidence that Walker threatened to file suit against the District if she were fired, and then dropped the threat when Bergman recommended renewal of her contract. This supports the conclusion that Walker had not necessarily filed the reports in good faith, but instead as a means of pressuring Bergman.

Accordingly, there was sufficient evidence, both legally and factually, to support the jury's verdict that Walker was not suspended for whistleblowing. We overrule Walker's points of error 18 and 22.

## VII. Jury issues

Walker questions the composition and conduct of the jury in her points of error 21 and 28. She alleges that the trial court abused its discretion by seating an

alternate juror, who was only seated after she had called most of her witnesses. Additionally, she questions the propriety of the jurors sending notes to the judge regarding the length of the trial.

There is no requirement that the twelve original jurors render the ultimate verdict with no substitutions. *See Schlafly v. Schlafly*, 33 S.W.3d 863, 869–70 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (noting neither the Texas Constitution nor the Texas Rules of Civil Procedure prevent seating alternate jurors). Walker had the same opportunity to conduct voir dire on the alternate juror as on the original jurors, and she failed to object to seating the alternate juror during the trial. *See id.* (considering these factors in holding the seating of an alternate juror harmless). And jurors are allowed to communicate using notes with the trial court. *See* TEX. R. CIV. P. 285 (allowing jury to communicate with the court either orally or in writing).

Any error in replacing the original juror with an alternate or allowing the jury to send notes to the judge was harmless in this case. We cannot reverse a judgment unless the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1. The alternate juror in this case was seated, not after the testimony of many of her witnesses as Walker alleges, but on the second day of trial and without objection from Walker. The jury verdict against Walker was unanimous, so even if the original juror had voted in her favor, the judgment

23

against her would stand. *See* TEX. R. CIV. P. 292 (allowing non-unanimous verdicts or unanimous verdicts by fewer than twelve jurors); *Yanes v. Sowards*, 996 S.W.2d 849, 852 (Tex. 1999) (upholding trial court's decision to proceed with trial and render judgment with only eleven jurors after dismissing juror due to his grandfather's illness).

Accordingly, we overrule Walker's points of error 21 and 28.

## Conclusion

Having overruled all of Walker's points of error, we affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.