**Michael G. SCHLAFLY, Appellant,**

v.

**Karen S. SCHLAFLY, Appellee.**

**No. 14–99–00303–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 22, 2000.

Rehearing Overruled Jan. 4, 2001.

Anne Harland Recio, Christopher J. Maurer, Houston, for appellants.

Jacqueline Taylor, Houston, for appellees.

Panel consists of Justices MAURICE AMIDEI, ANDERSON and FROST.

## OPINION

FROST, Justice.

This is an appeal from a divorce case in which the husband/appellant brings six issues, contending the trial court erred: (1) in instructing the jury; (2) in awarding *ad litem* fees without evidence, designating those fees "child support," and ordering them paid through wage withholding; (3) in denying him the right to a trial by jury;

(4) by signing a decree awarding medical decisions exclusively to the wife; (5) in awarding the husband's separate property to the wife; and (6) in awarding "in excess of 90% of the community assets" to the wife/appellee. We affirm the portion of the judgment relating to custody of the minor child and reverse and remand the portion of the judgment pertaining to the property division.

## I. FACTUAL BACKGROUND

Appellant, Michael G. Schlafly ("Mike") and appellee, Karen S. Schlafly ("Karen") met in January of 1992, and married in October of the same year. The couple have one son, Carl, who was two and a half years old at the time the parties separated in October of 1995. Mike filed for divorce in November of 1995, seeking custody of Carl. The jury decided custody, naming Karen primary joint managing conservator. The trial court determined all property issues. After the trial court signed a final decree of divorce, Mike unsuccessfully sought a new trial.[1]

## II. CUSTODY

In his first issue, Mike contends the trial court erred in instructing the jury to determine with whom *does* Carl primarily reside rather than with whom *should* Carl primarily reside. Mike also alleges this instruction is legally insufficient to resolve the custody issue.

To preserve error in the charge in a civil matter, the objecting party must distinctly designate the error and the grounds for the objection. *See* TEX.R.APP. P. 33.1(a); TEX.R. CIV. P. 272; *Keetch v. Kroger Co.*, 845 S.W.2d 262, 267 (Tex. 1992). Likewise, to preserve the issue of whether an instruction in the jury charge is legally insufficient, the appellant must make an objection in the trial court. *See State Dep't of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex.1992); *Casteel–Diebolt v. Diebolt*, 912 S.W.2d 302, 304 (Tex. App.—Houston [14th Dist.] 1995, no writ). A party may make this objection: (1) before the trial court gives the charge to the jury; (2) in a motion for instructed verdict; (3) in a motion to disregard the jury's answer; (4) in a motion for judgment notwithstanding the verdict; or (5) in a motion for new trial specifically raising the complaint. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex.1992); *Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc.*, 927 S.W.2d 146, 149 (Tex.App.—Corpus Christi 1996, no writ); *Regan v. Lee*, 879 S.W.2d 133, 135 (Tex.App.—Houston [14th Dist.] 1994, no writ). The "party complaining on appeal must have made the trial court aware of the complaint and must have obtained a ruling." *Casteel–Diebolt*, 912 S.W.2d at 304 (citing *Payne*, 838 S.W.2d at 241). Mike did not make the trial court aware of his complaint by objecting to the jury charge or by bringing any of the appropriate motions; therefore, he failed to preserve the question of whether the trial court erred in the charge to the jury and the question of whether the instruction was legally insufficient. We overrule his first issue.

## III. AD LITEM FEES

In his sixth issue, Mike contends the trial court erred in awarding *ad litem* fees without evidence, designating those fees as "child support," and ordering the fees paid through wage withholding. To

---

1. Both parties included extensive factual narratives in their briefs that had nothing to do with the issues raised in this appeal, often straying outside the record. Briefs are supposed to concisely state the facts pertinent to the issues presented. *See* TEX.R.APP. P. 38.1(f). Parties are to confine their arguments and factual recitations to matters contained in the record. *See Melendez v. Exxon Corp.*, 998 S.W.2d 266, 280 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (citing TEX R.APP. P. 38.1(f), 38.1(h)). Appellate briefs are not to be used as a means of publicly venting anger or animosity or causing embarrassment or shame to the opposing party based on matters outside the record; rather, the brief is to outline the facts *in the record* supporting the parties' arguments.

preserve error, the objecting party must identify the error and the grounds for the objection. *See* Tex.R.App. P. 33.1(a); Tex.R. Civ. P. 272. Mike neither objected nor filed any motion aimed at the purported errors in awarding *ad litem* fees, designating those fees as "child support," and ordering them paid through wage withholding. Therefore, Mike failed to preserve these issues for appellate review. We overrule Mike's sixth issue.

## IV. Dismissal of Juror

In his second issue, Mike contends the trial court denied him his right to trial by jury by dismissing an empaneled juror whom the court did not first determine to be "disabled from sitting." The dismissed juror, a female, had reportedly approached Mike twice on days that he was testifying and said, *"[y]ou need to smile more."* The trial court dismissed the juror and replaced her with an alternate juror. Mike objected and moved for a mistrial, which the court denied.

### A. Standard of Review

The trial court has discretion to grant or deny a motion for mistrial. *See Puri v. Mansukhani,* 973 S.W.2d 701, 715 (Tex.App.—Houston [14th Dist.] 1998, no pet.). In reviewing the trial court's decision, an appellate court does not substitute its judgment for that of the trial court but decides whether the trial court's decision constitutes an abuse of discretion. *See McDaniel v. Yarbrough,* 898 S.W.2d 251, 254 (Tex.1995); *Riddick v. Quail Harbor*

*Condo. Ass'n, Inc.,* 7 S.W.3d 663, 678 (Tex.App.—Houston [14th Dist.] 1999, no pet.).

### B. Composition of Jury

Both the Texas Constitution and the Texas Rules of Civil Procedure require district court juries to "consist of twelve members unless not more than three jurors die" or are "disabled from sitting." *McDaniel,* 898 S.W.2d at 252 (citing Tex. Const. Art. V, § 13; Tex.R. Civ. P. 292). Denying a party the constitutional right to trial by jury constitutes reversible error. *See id.* at 253. Specifically, it is error to deny a party his constitutional right to a trial by twelve jurors unless a juror dies or becomes "disabled from sitting." *Id.* Here, Mike was not denied a full jury of twelve members. Although the trial court dismissed one juror, it replaced the dismissed juror with an alternate. Because Mike was not denied his constitutional right to a trial by a jury of twelve, we find no error.

Mike argues that the trial court nevertheless denied him his right to trial by jury because it dismissed an empaneled juror whom it had not found to be "disabled from sitting." In essence, Mike asserts that there is a right to trial by a jury consisting of the twelve regular members and not the alternates unless the regular members have died or become disabled.[2] In making this argument, Mike relies on the Texas Supreme Court's opinion in *McDaniel,* a case which addresses the constitutional right to a jury of twelve mem-

---

2. To the extent Mike is attempting to argue that it is error in and of itself (not because it violates the right to a trial by jury) to replace a juror with an alternate when the juror was not disqualified, this is an issue of first impression. Section 62.020, which authorizes the use of alternate jurors, does not address whether the trial court has discretion in replacing regular jurors with alternate jurors or whether it can only replace a juror in certain situations. *See* Tex. Gov't Code Ann. § 62.020 (Vernon 1998). The only indication from the plain meaning of the statute of when the court has no discretion, but "shall replace" regular jurors with alternates is when they "become or are found to be unable or disqualified to perform their duties." Tex. Gov't Code Ann. § 62.020(d) (Vernon 1998). However, Mike has presented no argument or authorities to support the notion that it is error to replace a juror with an alternate when the juror was not disqualified. "The brief must contain a clear and concise argument for the contention made, with appropriate citations to authorities and the record." Tex.R.App. P. 38.1(h). To the extent Mike has raised this issue, he has waived it.

bers. 898 S.W.2d at 252.[3] *McDaniel*, however, does not support Mike's position. Moreover, our review of the Texas Constitution, relevant statutes, and case law reveals nothing to suggest the trial court's action in this case constitutes error. The only possible support for Mike's position is a recent Texas Supreme Court case, *Yanes v. Sowards*, 996 S.W.2d 849 (Tex.1999), which contains language that could be construed as finding a right to trial by a jury consisting of twelve *regular* members. In *Yanes*, the Texas Supreme Court held that both the Texas Constitution and the Texas Rules of Civil Procedure require a district court jury to consist of "twelve *original* jurors" in the absence of an exception. *Id.* at 850 (emphasis added). However, only four years earlier, in *McDaniel*, the Texas Supreme Court found that both the state constitution and the procedural rules require a district court jury to consist of "twelve members" unless one of the previously mentioned exceptions applies. *See McDaniel*, 898 S.W.2d at 252. The issue then becomes whether "twelve original jurors" has a different meaning than "twelve members."

We have found no cases which address whether "twelve original jurors" means all the jurors originally empaneled, i.e., both the regular jury members and the alternate jurors, or only the regular jury members. *Yanes* did not involve a situation in which there was an alternate juror but rather a situation in which eleven jurors rendered the verdict. *Id.* Because *Yanes* did not address alternate jurors, we do not interpret it to mean that the jury must consist of twelve *regular* jury members.

There is nothing in *Yanes* to suggest the Texas Supreme Court, in issuing that opinion, intended to narrow its earlier interpretation of either the state constitution or the rule, neither of which had changed in the four years since *McDaniel*.

 Our examination of both the state constitution and Texas Rule of Civil Procedure 292 indicates that neither supports interpreting "original jurors" to mean only the regular jury members. The constitution itself does not mention "original jurors" or "twelve original jurors."[4] Rule 292, entitled "Verdict by Portion of Original Jury," provides "where as many as three jurors die or become disabled from sitting and there are only nine of the jurors remaining from an *original jury of twelve*, those remaining may render and return a verdict." Tex.R. Civ. P. 292 (emphasis added). Like all Texas Rules of Civil Procedure, we are to construe this rule liberally to attain the Rules' objective of "a just, fair, equitable, and impartial adjudication of the rights of litigants ... with as great expedition and dispatch and at the least expense ... as may be practicable...." Tex.R. Civ. P. 1. With this directive in mind, we focus our analysis on the difference between an alternate juror and a regular juror.

The statute authorizing the use of alternate jurors reads:

Alternate jurors shall be drawn and selected in the same manner as regular jurors. An alternate juror must meet the same qualifications, is subject to the same examination and challenges, shall

---

3. Mike emphasizes the Texas Supreme Court's recognition in *McDaniel* that the availability of alternate jurors does not change the definition of "disabled from sitting." 898 S.W.2d at 252 n. 1. The *McDaniel* court went on to note that despite the availability of alternate jurors, a jury still must consist of twelve members unless not more than three jurors die or become disabled from sitting. *Id.* In making this statement, the *McDaniel* court was clearly referring to a situation in which alternates are used but there are still fewer than twelve members.

We are not addressing the definition of "disabled from sitting" but rather whether Mike was denied his constitutional right to a jury of twelve members. Because the case before us does not involve a jury of fewer than twelve members, these statements from *McDaniel* are not applicable.

4. The Texas Constitution provides "[g]rand and petit juries in the District Courts shall be composed of twelve men...." Tex. Const. Art. V, § 13.

take the same oath, has the same functions, powers, and privileges, and shall be accorded the same facilities and security as a regular juror.

TEX. GOV'T CODE ANN. § 62.020(c) (Vernon 1998). The alternate juror hears the same evidence that a regular juror hears and, in the words of the statute, "has the same functions, powers and privileges." *Id.* There is no reason to treat a jury composed of twelve members, one of whom is an alternate, any differently than a jury composed of twelve regular members. Doing so would serve no purpose and would unnecessarily increase the time and expense of litigation by opening the gates to mistrials even in cases in which the right of litigants, to have a jury of twelve, has not been abridged. We find "original jurors" means all the jurors empaneled, both regular members and alternates.

Even if the Texas Constitution and/or the Texas Rules of Civil Procedure did require a jury to be composed of twelve *regular* jury members, unless not more than three regular jurors die or become disabled from sitting, any error in this case would be harmless. We cannot reverse a judgment unless the error probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1. An exception to this general rule usually applies when a trial court errs by denying the objecting party "a full jury of twelve members, absent an exception authorized by the constitution or applicable rules." *McDaniel,* 898 S.W.2d at 253; *Fiore v. Fiore,* 946 S.W.2d 436, 438 (Tex.App.— Fort Worth 1997, writ denied); *City of Jersey Vill. v. Campbell,* 920 S.W.2d 694, 698 (Tex.App.—Houston [1st Dist.] 1996, writ denied).[5] This exception, however, does not apply here because the objecting party, Mike, was not denied a full jury of twelve members. The trial court replaced the dismissed juror with an alternate. In

determining whether the trial court's action probably caused an improper judgment, we review the entire record. *See Kroger Co. v. Betancourt,* 996 S.W.2d 353, 363 (Tex.App.—Houston [14th Dist.] 1999, pet. denied) (citing *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 754 (Tex.1995)). To find reversible error, we must conclude that the whole case turns on the error. *See id.* (citing *Church & Dwight Co., Inc. v. Huey,* 961 S.W.2d 560, 570 (Tex.App.— San Antonio 1997, pet. denied)). Mike has brought forward no evidence to show the whole case turns on the trial court's substitution of an alternate juror for an original juror. Moreover, we fail to see how Mike could make such a showing on the facts in the record now before us. Mike had the same opportunity to conduct *voir dire* examination of the alternate juror as he did with the original juror, yet he did not challenge the alternate juror. The Fifth Circuit has held that when a disabled juror is replaced with an alternate whom the objecting party did not challenge, that party waives any contention that the seating of the alternate alone operated to deny him a fair trial. *See United States v. L'Hoste,* 609 F.2d 796, 802 (5th Cir.1980). We agree. Mike's second issue is overruled.

## V. MEDICAL DECISIONS

In his fifth issue, Mike contends the trial court erred in awarding the medical decisions, relating to the couple's minor son, exclusively to Karen in the decree of divorce when the trial court had earlier ruled from the bench that medical decisions should be a joint right shared by Mike and Karen. The trial court actually ruled that (a) Karen would have the sole right to make *educational* decisions regarding Carl, (b) Mike would have the sole right to make *legal* decisions regarding

---

**5.** Although these cases were decided under former rule 81(b) of the Texas Rules of Appellate Procedure, the rule was only changed to omit the phrase "reasonably calculated to cause" an improper judgment, and no sub-

stantive change was intended. *See Magee v. Ulery,* 993 S.W.2d 332, 337 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (citing TEX. R.APP. P. 44.1 cmt. (Vernon 1998)).

Carl, and (c) all *other* rights would be "standard."

As previously noted, to preserve error, a party must timely object or file a motion specifically stating the grounds for the desired ruling if the grounds are not apparent from the context. *See* Tex.R.App. P. 33.1(a). Mike did not object or file a post-trial motion challenging the decree of divorce granting Karen the exclusive right to consent to medical decisions for Carl.[6] Because Mike did not preserve this issue for appeal, we need not address it. However, in the interest of justice, we will consider Mike's argument.

A trial court may change its rulings while it has plenary power. *See* Tex.R. Civ. P. 329b(d); *McCormack v. Guillot,* 597 S.W.2d 345, 346 (Tex.1980). The trial court had plenary power when it signed the decree of divorce. Even if the trial court intended that both Karen and Mike would have a joint right to make medical decisions when it ruled that all other rights should be "standard," it was within the court's power to modify the judgment anytime during the plenary period and to grant the right exclusively to Karen.[7] Therefore, notwithstanding Mike's failure to preserve error, his argument has no merit. We overrule Mike's fifth issue.

## VI. PROPERTY DIVISION

 In his third and fourth issues, Mike contends the trial court abused its discretion in awarding Mike's separate property to Karen and in awarding "90% of the community property" to Karen. In a divorce decree, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam.Code Ann. § 7.001 (Vernon 1998). To disturb a trial court's division of property, the appellant must show the trial court clearly abused its discretion by a division that is manifestly unjust and unfair. *See Ridgell v. Ridgell,* 960 S.W.2d 144, 147 (Tex.App.—Corpus Christi 1997, no pet.); *Kuehn v. Kuehn,* 594 S.W.2d 158, 161 (Tex.App.—Houston [14th Dist.] 1980, no writ). A trial court abuses its discretion when it rules without supporting evidence. *See In re P.M.B.,* 2 S.W.3d 618, 621 (Tex.App.—Houston [14th Dist.] 1999, no pet.). In reviewing the trial court's decision, our analysis focuses on a two-pronged inquiry:

(1) Did the trial court have sufficient information upon which to exercise its discretion; and

(2) Did the trial court abuse its discretion by causing the property division to be manifestly unjust or unfair?

*See Evans v. Evans,* 14 S.W.3d 343, 346 (Tex.App.—Houston [14th Dist.] 2000, no pet.) (citing *In re De La Pena,* 999 S.W.2d 521, 527 (Tex.App.—El Paso 1999, no pet.)).

## A. Separate Property

 A trial court has no authority to divest a spouse's interest in separate property. *See Vickery v. Vickery,* 999 S.W.2d 342, 371 (Tex.1999); *Cameron v. Cameron,* 641 S.W.2d 210, 213–20 (Tex.1982); *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 140 (Tex.1977). The trial court ruled that

---

6. In fact, Mike mischaracterized the decree of divorce when he said it "gives Karen the sole right to make medical decisions." The decree of divorce gave Karen "the exclusive right to consent to medical, dental, and surgical treatment involving invasive procedures and to consent to psychiatric and psychological treatment of the child." However, it also gave both Mike and Karen the right to consent to medical, dental, and surgical treatment involving an immediate danger to the health and safety of the child, during an emergency. Additionally, the decree gave each parent, during periods of possession, the right to consent to medical and dental care not involving an invasive procedure.

7. In the event that Mike meant to assert that the trial court erred in granting Karen the exclusive right to consent to medical decisions, he has not briefed this issue. Issues not briefed are waived. *See* Tex.R.App. P. 38.1(h).

Mike had a 22% separate property interest in the couple's home on Sea Island, yet in the final decree of divorce, the trial court failed to award 22% of the Sea Island home to Mike and instead gave the entire property to Karen.

Karen does not dispute that Mike owned a 22% separate property interest in the Sea Island property; instead, she claims that the parties entered into a written agreement regarding the treatment of this property and that the decree of divorce merely reflects this agreement. According to Karen, the parties agreed that Mike would substitute his separate property interest in the Sea Island property (valued at approximately $21,000) for a $21,000 judgment for Karen's attorney's fees, awarded against him and in favor of Karen.

■ The Texas Family Code authorizes written agreements concerning the division of a couple's property and liabilities. *See* TEX. FAM.CODE ANN. § 7.006 (Vernon 1998). A party to a divorce may be estopped from attacking a judgment on the ground that it divested him of his separate property, where the judgment was made pursuant to an agreement between the parties. *See McLendon v. McLendon,* 847 S.W.2d 601, 608 (Tex.App.—Dallas 1992, writ denied); *Boyett v. Boyett,* 799 S.W.2d 360, 363 (Tex.App.—Houston [14th Dist.] 1990, no writ). The trial court's findings of fact and conclusions of law state, "[t]he parties entered into Rule 11 Stipulations regarding the separate property of each party which were approved by the Court." Mike, however, alleges that there is no rule 11 agreement pertaining to the Sea Island property.

■ Texas Rule of Civil Procedure 11, entitled "Agreements To Be in Writing," provides that an agreement between parties or their attorneys will not be enforced unless it is "in writing, signed, and filed with the papers as part of the record...." TEX.R. CIV. P. 11. There is no rule 11 agreement in the record now before us nor

anything else to support the trial court's finding that the parties entered into "Rule 11 Stipulations regarding the separate property for each party." For this reason, we must conclude that the trial court had no authority to divest Mike of his separate property even though Mike was justly compensated for it. Therefore, we find the trial court erred in its division of marital property and sustain the complaint raised in Mike's third issue.

■ An appellate court does not have the authority to render judgment dividing marital property of the parties. *See McKnight v. McKnight,* 543 S.W.2d 863, 866 (Tex.1976); *Robles v. Robles,* 965 S.W.2d 605, 621 (Tex.App.—Houston [1st Dist.] 1998, pet. denied); *McElwee v. McElwee,* 911 S.W.2d 182, 188 (Tex.App.—Houston [1st Dist.] 1995, writ denied). Thus, even though modifying the decree of divorce to comply with the bench ruling would seemingly eliminate the problem, we do not have the power to do so. Therefore, we must reverse and remand this case to the trial court for a new division of marital property.

## B. Community Property

■ As we have found that the trial court's erroneous award of Mike's separate property to Karen requires reversal of the property division, we need not reach Mike's claim of error in the overall community property division. Nevertheless, for reasons explained below, we are compelled to address the manner in which Mike has presented this issue to us and to emphasize the critical role of the appellate advocate in accurately and fairly representing the record in briefing to this court.

■ Mike argues that it was an abuse of discretion for the trial court to award "over 90% of the community property" to Karen. It is overwhelmingly apparent to this court that Mike's brief not only misrepresents the trial court's actions in this regard, but also fails to disclose material facts appearing in the record that are es-

sential to a proper determination of his claim.[8] Specifically, Mike's unilateral calculation of a 90% community property award to Karen is based upon the parties' pre-trial inventory valuations, and not on valuations used by the trial court in its property division. Mike complains of bills totaling over $123,000; yet, the invoices on which he bases his arguments are outside the record. It is improper for parties to rely on matters outside the record in making arguments to the court. *See, e.g., Melendez v. Exxon Corp.*, 998 S.W.2d 266, 280 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (holding parties are to confine their arguments and factual recitations to matters contained in the record). Perhaps most egregious is Mike's failure to recognize or even mention the debts assessed against each party's share of the community estate in arguing that the trial court made a disproportionate division of community property in favor of Karen. According to the trial court's spreadsheet attached to its findings of fact and conclusions of law, Mike's share in the division of the community estate, including property and debts, was $13,642.13, while Karen's share was a *negative* $22,847.11. The "facts," as represented in Mike's brief, do not even approach a fair portrayal of the facts appearing in the record.

■ The Texas Disciplinary Rules of Professional Conduct impose upon counsel the duty of candor toward the court. *See* Tex. Disciplinary R. Professional Conduct 3.03(a)(1) (stating that a "lawyer shall not knowingly make a false statement of material fact or law to a tribunal."). Similarly, both the *Texas Lawyer's Creed*[9] and the *Texas Standards of Appellate Conduct*[10]

admonish counsel against making misrepresentations to a court. The duty of honesty and candor a lawyer owes to the appellate court, includes fairly portraying the record on appeal. Misrepresenting the facts in the record not only violates that duty but subjects offenders to sanctions. *See American Paging of Texas, Inc. v. El Paso Paging, Inc.*, 9 S.W.3d 237, 242 (Tex. App.—El Paso 1999, pet. denied).

Counsel who mischaracterize or misrepresent the facts in the appellate record impose a tremendous hardship on the reviewing court and its staff. The voluminous case load and the sheer size of the appellate records in many cases often make for a very time-consuming appellate review. When counsel misrepresent the facts on which their legal arguments are based, they not only delay the entire process by unnecessarily adding to the court's workload but also render a tremendous disservice to their clients. It is also very poor strategy to misrepresent the record because any material misstatements and/or omissions will almost certainly be detected by opposing counsel, the appellate panel, and/or the court's alert and able staff. In this case, Mike's factual representations constituted such an obvious mischaracterization of the record that the discrepancies were apparent to all.

■ Our adversary system contemplates that each party's advocate will present and argue favorable and unfavorable facts in the light most advantageous to his client; it does not contemplate misrepresentation or mischaracterization of those facts. While a lawyer may chal-

---

8. We note that Mike's appellate brief does not contain any references to the record in its "Statement of Facts," and that his argument under this issue makes only one reference to the record. This briefing is in clear violation of Texas Rule of Appellate Procedure 38.1(f).

9. In the section of the *Texas Lawyer's Creed* pertaining to a lawyer's interaction with the court, the lawyer steadfastly pledges *"I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain*

*an advantage."* Texas Lawyer's Creed, Lawyer and Judge 6 (emphasis added).

10. In the section of the *Texas Standards of Appellate Conduct* pertaining to a lawyer's duties to the court, appellate counsel are instructed not to "misrepresent, mischaracterize, misquote or miscite the factual record or legal authorities." Texas Standards of Appellate Conduct, Lawyer's Duties to the Court 4.

lenge the legal effect of unfavorable facts, he may not misrepresent them to the court. Where the record contains unfavorable facts, the appellate advocate should fairly disclose and portray them in his brief. Of course, having done so, he may then zealously and vigorously challenge their impact on the case or argue for the application of law which would minimize or eliminate the court's valid consideration of them. Failure to observe these very basic standards of appellate practice erodes the ethical standards on which the legal profession and the appellate process are based.

Mike's blatant misrepresentation and mischaracterization of the facts in his briefing to this court is inexcusable. We find good cause for ordering him to pay all costs of this appeal, and so order. *See* TEX.R.APP. P. 43.4.

## VII. CONCLUSION

We affirm the portion of the judgment of the trial court pertaining to the custody order, and we reverse and remand the portion of the judgment pertaining to the property division.