**Opinion filed December 21, 2018**



## In The

# Eleventh Court of Appeals

_____

### No. 11-16-00346-CV

_____

## SOUTHSIDE PARTNERS, Appellant

## V.

## COLLAZO ENTERPRISES, LLC, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CV1408293**

### M E M O R A N D U M   O P I N I O N

Appellant, Southside Partners (Southside)[1], appeals the trial court's grant of traditional summary judgment in favor of Appellee, Collazo Enterprises, LLC (Collazo).  In three issues, Southside asserts that the trial court erred by (1) granting summary judgment based on Collazo's bona-fide-purchaser-for-value affirmative

---

[1]Southside Partners is the assumed name of William W. Ruth.

defense when a fact issue existed; (2) granting summary judgment before allowing Southside to obtain additional discovery; and (3) granting summary judgment when Collazo was on notice of a fraudulent deed transfer that was outside the chain of title. We affirm the trial court's judgment.

## Background Facts

### I. Relevant Facts

This dispute involves the transfer of approximately 26 acres in Brown County (the Property). William W. Ruth originally purchased the property in July 2002 at a tax sale. In September 2002, Ruth executed a Warranty Deed conveying the property to William, Colby, and Tanner Crow, the minor children of James and Donna Crow.[2] Southside claims that Ruth reserved fifty percent of the ownership in the property despite the absence of any reservation in his deed to the Crow children. In 2006, James A. Crow filed suit against his minor children claiming that title to the property was improperly placed in his children's names. Ruth was unaware of this litigation. The trial court granted judgment in James Crow's favor and title to the property was placed in his name. Subsequently, James Crow was indicted and convicted of health care fraud resulting in the forfeiture of his personal and real property, including the Property. In April 2013 the federal court entered an order of forfeiture against James Crow, and the United States acquired title to the Property. On June 9, 2014, the United States of America conveyed the property to Collazo by Special Warranty Deed in consideration of $25,000.

### II. Procedural Background

Southside filed suit against Collazo and others seeking to set aside the sale of the Property from the United States of America to Collazo. In July 2015, Collazo filed a traditional motion for summary judgment based on its affirmative defense of

---

[2]Ruth is the nephew of James Crow.

2

bona fide purchaser for value. Southside filed its response on August 3, 2015. The motion was heard on August 14, 2015. The trial court ruled on April 3, 2016, and entered its order granting Collazo's motion for summary judgment on July 7, 2016. This court's review is complicated by the number of pleadings and evidence submitted, without leave of court, after the summary judgment hearing and both before and after the summary judgment was entered. The claims between Southside and Collazo were ultimately severed into a separate cause which is the subject of this appeal.

*Discussion*

## I. Standard of Review

We review the trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In our de novo review of the trial court's judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The movant has the burden to establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).

For a defendant to prevail on a traditional summary judgment, he must show there is no genuine issue of material fact concerning one or more essential elements of the plaintiff's cause of action or establish each element of an affirmative defense as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990). Once the movant produces sufficient evidence conclusively establishing its right to summary judgment, the burden shifts to the

nonmovant to present evidence sufficient to raise a fact issue. *Knott*, 128 S.W.3d at 215; *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995),

## II. Scope of Review

In addition to Collazo's motion for traditional summary judgment, Southside's response, and Collazo's reply, the parties filed numerous pleadings and affidavits relating to the summary judgment that were late under TEX. R. CIV. P. 166a(c). Both Southside and Collazo filed these late pleadings without leave, but the trial court's order granting summary judgment identifies the following documents as those it considered:

- Plaintiff's Reply and Concerns as to Defendant Collazo Enterprises, LLC's Motion for Traditional Summary Judgment,
- Plaintiff's Supplemental Response to Defendant Collazo Enterprises, LLC's Motion for Summary Judgment,
- Defendant Collazo Enterprises, LLC's Response to Plaintiff's Post-Hearing Summary Judgment Replies,
- Plaintiff's Second Motion to Compel, Supplemental Motion for Sanctions and Supplemental Response to Collazo Enterprises, LLC's Motion for Summary Judgment, and
- Defendant Collazo Enterprises, LLC's Reply to Plaintiff's Supplemental Post-Hearing Summary Judgment Response.

In addition to the foregoing pleadings considered by the trial court, the parties filed additional pleadings before and after the entry of the summary judgment that were not specifically referenced by the trial court, including:

- Southside's Objections to Defendant Collazo Enterprises, LLC's Proposed Order and Motion for Continuance,
- Collazo's Reply to Plaintiff's Objection to Proposed Order and Motion for Continuance, and
- Southside's Motion for Reconsideration.

Collazo contends that Southside's late arguments and the evidence submitted in the late pleadings should be disregarded because Southside failed to request leave of court for its arguments and evidence to be considered. According to Texas Rule

4

of Civil Procedure 166a(c), the nonmovant must file its summary judgment response and evidence at least seven days before the summary judgment hearing, unless the nonmovant gets permission to file it later. TEX. R. CIV. P. 166a(c). If the trial court allows the late filing of evidence, the trial court must affirmatively indicate in the record acceptance of the late filing. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996); *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 n.1 (Tex. 1988). Absent any indication that leave was granted, such as an order granting leave to late file, appellate courts must presume the trial court did not consider the late-filed evidence. *See Fertic v. Spencer*, 247 S.W.3d 242, 250–51 (Tex. App.—El Paso 2007, pet. denied); *see also Benchmark Bank*, 919 S.W.2d at 663.

Although there is no record that Southside requested leave to submit its filings, the court's Order Granting Defendant Collazo Enterprises, LLC's Traditional Motion for Summary Judgment specifically identifies the pleadings it "considered." including the untimely filed Southside pleadings referenced above that were submitted before the trial court ruled on the summary judgment. Thus, the presumption that the trial court did not consider the untimely filed Southside evidence vanishes by virtue of the court's admonition that it considered such documents. Such is not the case, however, for the Southside pleadings and evidence submitted after the trial court ruled on the Summary Judgment. There is nothing in the record to indicate these filings were considered or reviewed for purposes of the summary judgment, and the court was not obligated to review the filings. After granting summary judgment, the trial court generally has no obligation to consider further motions on issues adjudicated by the summary judgment. *Brookshire Katy Drainage Dist. v. Lily Gardens LLC*, 333 S.W.3d 301, 307 n.3 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (op. on reh'g) (citing *Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 650–51 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

Therefore, this court's scope of review is limited to timely filed documents and those documents that the trial court stated were considered in its order granting summary judgment.

### III. Issue One: Was Collazo a Bona Fide Purchaser for Value?

Southside contends that there were material fact issues surrounding whether Collazo was a bona fide purchaser for value because there was evidence of actual and constructive notice, as well as a lack of evidence to support whether the amount paid for the property was of sufficient value. Collazo responds that it submitted sufficient evidence on the required elements of its affirmative defense and that Southside failed to submit evidence sufficient to raise a fact issue.

### A. Bona Fide Purchaser for Value

"Status as a bona fide purchaser is an affirmative defense to a title dispute." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (citing *Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984) (per curiam)). Under Texas law, an unrecorded conveyance of an interest in real property is void as to a subsequent purchaser who purchases the property for valuable consideration and without notice. TEX. PROP. CODE ANN. § 13.001(a) (West 2014). However, the unrecorded instrument is binding on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument. *Id.* § 13.001(b); *City of Richland Hills v. Bertelsen*, 724 S.W.2d 428, 429 (Tex. App.—Fort Worth 1987, no writ). Thus, to receive the bona fide purchaser protection, a party must acquire the property in good faith, for value, and without notice of any third-party claim or interest. *Madison*, 39 S.W.3d at 606; *Fletcher v. Minton*, 217 S.W.3d 755, 758 (Tex. App.—Dallas 2007, no pet.). Notice may be constructive or actual. *Flack v. First Nat'l Bank of Dalhart*, 226 S.W.2d 628, 631 (Tex. 1950); *Am. Surety Co. of New York v. Bache*, 82 S.W.2d 181, 183 (Tex. Civ. App.—Fort Worth 1935, writ ref'd). Actual notice rests on personal information or knowledge, as well as those facts that a reasonable inquiry would

6

have disclosed. *Madison*, 39 S.W.3d at 606; *Flack*, 226 S.W.2d at 631. Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Flack*, 226 S.W.2d at 632.

Both the elements of notice and valuable consideration are at issue in this appeal. "Notice" is broadly defined as information concerning a fact actually communicated to a person, derived by him from a proper source, or presumed by law to have been acquired. *Flack*, 226 S.W.2d at 631.

### B. *Actual Notice of Southside's Claims*

In support of its motion for summary judgment, Collazo submitted the affidavit of Collazo Enterprises, LLC signed by its president, Lou Collazo. In the affidavit, Lou Collazo stated that he was the only individual with Collazo Enterprises, LLC involved in the purchase of the Property from the United States and that he was never informed of the claims of Ruth, individually or as Southside. Lou Collazo also denied ever speaking or corresponding with James Crow or Donna Crow prior to purchasing the Property.

Southside contends that Collazo had actual notice of Ruth's interest in the Property based on Collazo's contact with several individuals, including Ronald "Vann" Stanford, Collazo's agent for purchase of the property; Tanya Patton, Lou Collazo's alleged girlfriend; The Property Shop, which placed the "for sale" sign on the Property; the U.S. Attorney's Office; James Crow; Donna Crow; and H.C. "Clay" Riley.

### 1. *Stanford*

Collazo identified Stanford in discovery as its agent for the purchase of the Property. Southside contends that there is evidence of conversations Stanford had with Ruth about Ruth's ownership interest in the property. The evidence Southside alludes to, however, is contained in an affidavit of Ruth that was not part of the summary judgment record. The affidavit was filed in support of a motion for

7

reconsideration filed on August 8, 2016, a month after the entry of the trial court's summary judgment. There is no record that the trial court considered the motion for reconsideration or Ruth's affidavit; nor did the trial court have a duty to review the same. "[I]ssues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion . . . ." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *see City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) ("the non-movant must expressly present to the trial court any reasons seeking to avoid movant's entitlement"); *see also* TEX. R. CIV. P. 166a(c). After granting summary judgment, the trial court generally has no obligation to consider further motions on issues adjudicated by the summary judgment. *Macy*, 294 S.W.3d at 650–51 (New arguments to defeat summary judgment presented after the trial court has granted summary judgment do not warrant reversal.; *see Brookshire* Kath, 333 S.W.3d at 307 n.3. Accordingly, we limit our review to those arguments and evidence set out in Southside's summary judgment responses considered by the trial court, not evidence and arguments presented for the first time in Southside's motion for reconsideration.

### 2. Patton

William Ruth filed an affidavit in support of Plaintiff's Reply and Concerns as to Defendant Collazo Enterprises, LLC's Motion for Traditional Summary Judgment.[3] Ruth, an attorney, was contacted by Patton about a legal matter. However, after some discussion he believed that she was not being candid or truthful. Ruth learned that Patton had a boyfriend she later identified as "Lewis." Ruth researched Patton's address and learned it was owned by a person named Lou

---

[3]The order granting summary judgment reflects that the trial court considered this pleading.

Collazo.  Patton informed Ruth that Donna Crow hated him, and Ruth learned that Collazo had been in communications with Donna Crow.

Based on our standard of review, we consider the evidence in the light most favorable to Southside.  Ruth described a conversation between Ruth and Patton but no details concerning the conversation are provided other than Patton told Ruth he was hated by Donna Crow.  Ruth did not believe Patton credible, and he concluded that she had a connection with Lou Collazo.  Lacking is any evidence in Ruth's affidavit that he told Patton that he or Southside was claiming an interest in the Property, or that Patton told Lou Collazo that Southside or Ruth was claiming an interest.  Ruth's affidavit does not raise a fact issue as to actual notice from Patton.

### 3. *The Property Shop*

Southside claims that actual notice was provided to Collazo through The Property Shop, which was the listing agent for the United States in the sale to Collazo.  Southside contends in its brief that The Property Shop placed a "for sale" sign on the Property and that Ruth called The Property Shop and informed it of Ruth's ownership interest in the Property.  Southside refers to its reply to Collazo's motion for summary judgment and supporting affidavit of Ruth.[4]  Notably, The Property Shop is never mentioned in the reply or supporting affidavit. In the reply, there is one sentence that provides: "It will be shown at trial that the realty agent who listed and had signage on the property was on notice of Ruth's claims. **[Affidavit of William Ruth, Exhibit "A"]**."  In Ruth's affidavit, he never mentioned The Property Shop.  Without providing any dates or detail, Ruth stated

---

[4]No mention of The Property Shop is in the affidavit of Ruth.  "The duty of honesty and candor a lawyer owes to the appellate court, includes fairly portraying the record on appeal.  Misrepresenting the facts in the record not only violates that duty but subjects offenders to sanctions." *Schlafly v. Schlafly*, 33 S.W.3d 863, 873 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT R. 3.03(a)(1)).  "Failure to observe these very basic standards of appellate practice erodes the ethical standards on which the legal profession and the appellate process are based." *Id.* at 874.

that there was a realtor's sign on the Property and that he contacted the realtor twice and disclosed that "the Crow children and I had a claim against the property." Missing however, is any testimony or evidence that the undisclosed realtor had contact with Collazo or disclosed to Collazo anything about Southside's claims to the Property. The statements in Ruth's affidavit do not raise a fact issue as to actual notice from The Property Shop.

### 4. *The U.S. Attorney's Office*

Ruth submitted an affidavit in support of Southside's response to Collazo's motion for summary judgment (Response). In his affidavit, Ruth stated that he asserted his rights to the Property through communications with U. S. Attorney Jumes who was in charge of obtaining and disposing of James Crow's assets and properties, including the disputed property. Ruth attached to the Response a letter to Jumes describing his claim.[5] According to Ruth, Jumes left the U. S. Attorney's office before the sale to Collazo. Although there is evidence that Ruth explained his claim to Jumes, there is no evidence Jumes or anyone else communicated any claims to Collazo and, therefore, no fact issue arises from these facts.

### 5. *James Crow, Donna Crow, and H.C. "Clay" Riles*

In its brief, Southside contends that a letter from James Crow to Lou Collazo provided in discovery "raises the question that prior communications had been taking place between the parties which is consistent with Patton having informed Ruth that Collazo had been in communications with the Crows." The "letter" attached to Southside's supplemental response to Collazo's motion for summary judgment is undated but appears to be responding to the lawsuit filed by Southside after Collazo purchased the property: "Lou, I have attempted to address most of the

---

[5]Southside asserts that both The Property Shop and the U.S. Attorney's office would have a duty to communicate its claims to Collazo. Southside cites no authority for this proposition.

points of the lawsuit so you might understand where [B]ill is coming from." Even assuming this is a letter from James Crow to Lou Collazo, there is nothing in the letter indicating that James Crow spoke to Collazo before Southside's lawsuit was filed. Viewing the evidence in the light most favorable to Southside, the letter fails to raise a fact issue that Collazo was informed of Ruth's claims prior to the purchase of the property.

## C. Constructive Notice of Southside's Claims

Southside contends that it was in possession of the property in dispute and that the possession was open, visible, and sufficient to put Collazo on notice of Southside's claims. Southside relies on its contact with The Property Shop constituting open and obvious possession. Southside also provides the unsubstantiated opinion that in a small town "persons in the realty business have a good understanding of what properties are owned by others." Southside's unsubstantiated opinion and discussions with The Property Shop do not constitute evidence of possession of the Property. *See Madison*, 39 S.W.3d at 606 (duty to ascertain rights of third-party possessor only arises if the possession is visible, open, exclusive, and unequivocal). It is undisputed that the Property was undeveloped land contained within a flood plain without habitations or improvements. There was no actual possession or occupancy of the land. There is no evidence of visible possession or control by anyone, and a person examining the tract would not be on notice of any inconsistency with the record ownership of the Property in James Crow. *See De Guerin v. Jackson*, 50 S.W.2d 443, 448 (Tex. Civ. App.—Texarkana 1932) (holding there was no "visible" circumstance pointing to claimant as possessor of a cotton field and noting that "[a]ll the authorities agree" that the possession must be "open, visible, and unequivocal" to impute notice to a potential purchaser), *aff'd*, 77 S.W.2d 1041 (Tex. 1935).

Southside also points to "Exhibit C" in its reply to Collazo's motion for summary judgment as evidence sufficient to give Collazo constructive notice of Southside's claims. Exhibit C looks like a piece of paper on which is written: "This Property Does Not Belong To Bill Ruth!! No Matter What He Says." In its reply, Southside alleged that sometime after February 25, 2014, Ruth was told that signage was placed on the Property "assumably by Defendant Donna Crow." At the end of the paragraph are brackets surrounding "Exhibit C." Although Southside's brief on appeal alleges a connection between a sign placed on the Property and Donna Crow, Ruth's affidavit attached to the reply to Collazo's motion for summary judgment does not mention Exhibit C or the allegation that Donna Crow placed a sign on the Property.

Pleadings, such as the reply, are not competent summary judgment evidence. *Ellis v. Renaissance on Turtle Creek Condo. Ass'n*, 426 S.W.3d 843, 855 (Tex. App.—Dallas 2014, pet. denied); *Kosa v. Dallas Lite & Barricade, Inc.*, 228 S.W.3d 428 (Tex. App.—Dallas 2007, no pet.); *see Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) (pleadings are not competent evidence, even if sworn or verified). Documents submitted as summary judgment proof must be sworn to or certified. TEX. R. CIV. P. 166a(f).

We hold that that a fact issue was not raised regarding constructive notice based on possession of the Property.

### D. Type of Deed

Southside contends that Collazo's receipt of a special warranty deed rather than a general warranty deed from the United States should have put Collazo on notice of a potential title deficiency and, therefore, raises a fact issue on whether Collazo is a bona fide purchaser for value. Southside relies on cases involving quitclaim deeds and language that passes only the grantor's interest in the land on the date of conveyance rather than the land itself. *See Porter v. Wilson*, 389 S.W.2d

12

650 (Tex. 1965). Collazo responds that special warranty deeds do not carry any notice of defects of title, citing *Paul v. Houston Oil Co. of Tex.* 211 S.W.2d 345, 356 (Tex. Civ. App.—Waco 1948, writ ref'd n.r.e.) ("special warranty does not carry any notice of defects of title to the grantee").

A warranty deed to land conveys property; a quitclaim deed conveys the grantor's rights in that property, if any. *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 486 (Tex. 2005); *Cook v. Smith*, 174 S.W. 1094, 1095 (Tex. 1915). A general warranty deed expressly binds the grantor to defend against title defects created by himself and all prior title holders. A special warranty deed, by contrast, limits this warranty; the grantor warrants to defend title only against the claims and demands of the grantor and all persons claiming by, through, and under him. *See Dyer v. Cotton*, 333 S.W.3d 703, 712 n.2 (Tex. App.—Houston [1st Dist.] 2010, no pet.). As Southside's cases establish, a quitclaim deed "conveys upon its face doubts about the grantor's interest; any buyer is necessarily put on inquiry as to those doubts." *Geodyne*, 161 S.W.3d at 487. However, "[t]he fact that property is transferred via special warranty deed does not impart notice of a defect in title." *Munawar v. Cadle Co.*, 2 S.W.3d 12, 16 (Tex. App.—Corpus Christi 1999, pet. denied) (citing *Paul*, 211 S.W.2d at 356). We hold that Collazo's receipt of a special warranty deed does not raise a material fact issue regarding notice.

### E. Value of the Property

Collazo purchased the Property from the United States for $25,000. Southside complains that Collazo failed to carry its burden of proof to establish it was a bona fide purchaser for value because the only evidence of value was Collazo's personal opinion in his affidavit that the purchase amount of the Property was its value. Southside argues that the affidavit of David Harding, attached to Plaintiff's Motion

for Reconsideration, shows that the Property had a value of $216,000.[6] Collazo responds that the testimony of Lou Collazo is competent summary judgment evidence of value and Lou Collazo explained in his affidavit that the Property's diminished value was a result of its location in a flood zone with limited development possibilities.

A property owner may testify to the value of his property. *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012); *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984). Collazo submitted the affidavit of its principal, Lou Collazo, confirming that the purchase price from the United States was adequate given the land's location in the flood plain and lack of development possibility.

We disagree with Southside that Collazo had the burden to pay "full or substantial" value for the disputed property. The consideration necessary to establish a bona fide purchaser for value is not market value, it is value that is not grossly inadequate. "[W]e have never held that a party cannot be a bona fide purchaser who has paid simply less than the market value of the land." *Eastham v. Hunter*, 114 S.W. 97, 98 (Tex. 1908); *see McAnally v. Panther*, 26 S.W.2d 478, 480 (Tex. Civ. App.—Eastland 1930, no writ) (where the price is grossly inadequate, the purchaser cannot be a bona fide purchaser for value); *Phillips v. Latham*, 523 S.W.2d 19, 24 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.).

Southside directs us to the affidavit of Harding attached to Plaintiff's Motion for Reconsideration, but that evidence is not part of the summary judgment record. As mentioned previously, there is nothing in the record indicating that the trial court considered the motion, and it was under no duty to do so. *See Brookshire Katy*, 333

---

[6]Southside's argument is disingenuous. In David Harding's affidavit, he states that the disputed property "would have a value significantly above $25,000." He does not value the property at $216,000 but, instead, states that Ruth told him he had entered into an earnest money contract to sell approximately twelve acres for $216,000 for a proposed apartment complex.

S.W.3d at 307 (citing *Macy*, 294 S.W.3d at 650–51).

Collazo directs us to evidence submitted by Southside that supports the consideration Collazo paid for the Property. Ruth's affidavit in support of Southside's Response to Collazo's Motion for Summary Judgment refers to a series of Ruth's communications to Jumes, the U.S. Attorney involved in the forfeiture and sale of the disputed property. In an attached letter dated October 11, 2011, Ruth states: "I do not believe that the property has increased in value much more than the $500 an acre I paid for the property back in early 2000 . . . ." Thus, even Ruth's summary judgment evidence provides support for the good faith value paid for the Property.

We hold that Southside failed to raise a material issue of fact regarding the value paid by Collazo for the Property. We overrule Southside's first issue.

*IV. Issue Two: Failure of the Trial Court to Provide Discovery*

Southside claims that the trial court erred by granting summary judgment when Southside had outstanding relevant discovery requests and sought a continuance. Collazo responds that Southside was untimely in its request for a continuance and did not preserve this issue for appeal by obtaining a court ruling. Thus, the trial court did not abuse its discretion in failing to grant a continuance.

A review of the sequence of pertinent summary judgment filings, and the motion for continuance, is necessary to resolve this issue.

- 7/20/15 Collazo's Traditional Motion for Summary Judgment
- 8/03/15 Southside's Response to Collazo's Motion for Summary Judgment
- 8/14/15 Collazo's Reply to Southside's Response
- 8/14/15 Hearing on Motion for Summary Judgment
- 8/17/15 Southside's Reply and Concerns as to Collazo's Motion for Summary Judgment

15

- 8/27/15 Supplemental Response to Collazo's Motion for Summary Judgment

- 9/02/15 Collazo's Response to Southside's Post-hearing Summary Judgment Replies

- 4/3/16 Court rules that Collazo's motion for summary judgment was granted

- 4/8/16 Collazo circulates proposed order

- 5/20/16 Collazo's Amended Motion for Entry of Order

- 6/17/16 Southside's Objection to Collazo's Proposed Order, and Motion for Continuance

- 7/7/16 Order granting Collazo's Motion for Summary Judgment

Southside did not seek additional time for discovery by affidavit under TEX. R. CIV. P. 166a(g) or by motion for continuance prior to the hearing on the motion for summary judgment. Southside sought its first continuance complaining about the court's summary judgment ruling, and lack of discovery, on June 17, 2016, almost ten months after the summary judgment hearing, and two months after the trial court ruled in Collazo's favor.[7] Southside's Objection to Defendant Collazo Enterprises, LLC's Proposed Order and Motion for Continuance fails to describe in detail the evidence sought, state with particularity the diligence used to obtain the evidence, and explain why the continuance is necessary; all are necessary requirements for a continuance. *See West v. SMG*, 318 S.W.3d 430, 443 (Tex. App.—Houston [1st Dist.] 2010, no pet); *Rocha v. Faltys*, 69 S.W.3d 315, 319 (Tex. App.—Austin 2002, no pet.).

---

[7]In addition to complaining about the trial court's ruling in favor of Collazo, in its motion for continuance, Southside alerted the trial court that it would be removing the matter to federal court thereby depriving the trial court of jurisdiction to hear the motion. Apparently, the case was removed and then remanded back to the state court.

"When a party contends that it has not had an adequate opportunity for discovery **before** a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996) (emphasis added); *Nguyen v. Short, How, Frels & Heitz, P.C.*, 108 S.W.3d 558, 561–62 (Tex. App.—Dallas 2003, pet. denied); *see* TEX. R. CIV. P. 166a(g), 251, 252. In this case, Southside waited ten months after the summary judgment hearing, and almost two months after the trial court ruled, to file its motion for continuance and never obtained a ruling on its motion. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a **timely** request, objection, or motion and that the trial court (1) ruled on the request, objection, or motion, either expressly or impliedly, or (2) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal. TEX. R. APP. P. 33.1(a). Here, Southside failed to timely file its motion for continuance before the summary judgment hearing and before the trial court ruled. The motion was untimely and deficient, and the record does not show that the trial court ruled on Southside's motion for continuance. Therefore, Southside has failed to preserve error on this issue. *Gonerway v. Corrections Corp. of Am.*, 442 S.W.3d 443, 446 (Tex. App.—Dallas 2013, no pet.) (failure to obtain ruling on continuance failed to preserve error); *Hightower v. Baylor Univ. Med. Ctr.*, 251 S.W.3d 218, 224 (Tex. App.—Dallas 2008, pet. struck); *Mitchell v. Bank of Am.*, 156 S.W.3d 622, 626 (Tex. App.—Dallas, 2004, pet. denied) (party who failed to obtain ruling from trial court on motion for jury trial continuance failed to preserve error); *Washington v. Tyler Indep. Sch. Dist.*, 932 S.W.2d 686, 690 (Tex. App.—Tyler 1996, no writ) (party's failure to obtain written ruling on motion for continuance of summary judgment hearing waived any error).

Southside failed to obtain a ruling on the motion for continuance; therefore, we have nothing to review. Southside's second issue is overruled.

*V. Issue Three: Chain of Title*

Southside's third issue three is a combination of its arguments that Collazo failed to establish it was a bona fide purchaser for value and a complaint that the chain of title contains a void deed from Ruth to the Crow children. Collazo responds that the argument concerning fraud in the transfer to the Crow children was not raised in the summary judgment record and, therefore, was not preserved.

Southside's arguments concerning deficiencies in the evidence to establish bona fide purchaser for value have been addressed above. We turn to Southside's assertions concerning a void deed in Collazo's chain of title and examine whether Southside preserved this argument for review. Southside contends that the deed from Ruth to the Crow children dated 2002 was fraudulent because the Sheriff's Tax Deed conveying the property to Ruth documents a tax sale that occurred in July 2002, but apparently was not signed by the sheriff until February 2004. Thus, at the time of the conveyance to the Crow children in 2002, Ruth had nothing to convey.

In Southside's First Amended Petition for Judgment and Declaratory Judgment, Southside alleged that, "Prior to September 13, 2002 William Ruth, now d/b/a Southside Partners purchased [the property in dispute] at an ad valorem tax sale. This is not in dispute and admitted by Defendant James Crow." The petition also asserts that Ruth executed a deed to the Crow children in September 2002 and that, although the deed did not reserve any interest in Ruth, the intention was that Ruth would share in an undivided interest with the Crow children. The focus of the petition is on the alleged fraudulent transfer of title from the Crow children to James Crow in 2007 through litigation of which Southside had no knowledge. According to Southside, when the trial court rescinded the Ruth deed to the Crow children, the Property reverted to Ruth and could not be transferred to James Crow.

18

Consequently, Southside sought the cancellation of the deed from the Crow children to James Crow and an order declaring the Special Warranty Deed to Defendant Collazo invalid and ordered rescinded.

Ruth's affidavit was attached to Southside's Response to Collazo's Motion for Summary Judgment. Ruth affirmed that he had conveyed an undivided interest to the Crow children in 2002 but stated that the deed provided by Collazo did not look like his signature. In attached correspondence to Jumes, Ruth admitted that an undivided interest was conveyed to the Crow children in 2002 and that James Crow fraudulently transferred title into his own name in 2007. In another affidavit in support of Southside's reply to Collazo's motion for summary judgment, Ruth stated: "[A]t no time has Ruth deviated from acknowledging that he was to maintain an undivided one-half interest in the property to be shared with the Crow children."

A review of all of Southside's pleadings referenced as part of the summary judgment record do not reveal any argument that Ruth's ownership interest did not vest until 2004 or that he did not convey an undivided interest to the Crow children in 2002. That argument was raised for the first time in Southside's motion for continuance, filed two months after the trial court's ruling. The motion was not considered by the trial court as part of the summary judgment record. *See Fertic v. Spencer*, 247 S.W.3d 242, 250–51 (Tex. App.—El Paso 2007, pet. denied); *see also Benchmark Bank*, 919 S.W.2d at 663.

Because Southside did not timely raise the issue concerning the vesting of Ruth's ownership in 2004, its complaint is not grounds for reversal. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797–98 (Tex. 2008). Moreover, error was not preserved pursuant to TEX. R. APP. P. 33.1(a). We overrule Southside's third issue.

*Conclusion*

Reviewing the evidence in the light most favorable to the nonmovant, we hold that the trial court did not err in granting summary judgment in favor of Collazo Enterprises, LLC.  We affirm the judgment of the trial court.

REBECCA SIMMONS

FORMER JUSTICE

December 21, 2018

Panel consists of: Bailey, C.J.,
Simmons, F.J.,[8] and Wright, S.C.J.[9]

Willson, J., not participating.

---

[8]Rebecca Simmons, Former Justice, Court of Appeals, 4th District of Texas at San Antonio, sitting by assignment.

[9]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.