

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00259-CV

## IN THE INTEREST OF P.W. AND E.W., CHILDREN

**From the 77th District Court
Limestone County, Texas
Trial Court No. CPS-384-A**

## MEMORANDUM OPINION

In four issues, Holly challenges the trial court's order terminating her parental rights to P.W.[1]  In two issues, Randall challenges the trial court's order terminating his parental rights to E.W. and P.W.  Because we overrule all of Holly and Randall's issues, we affirm.

---

[1] Pursuant to Texas Rule of Appellate Procedure 9.8, the parties refer to the mother and father of the children using fictitious names.  *See* TEX. R. APP. P. 9.8.  We will do the same in this memorandum opinion.  Additionally, as this is a memorandum opinion and the parties are familiar with the facts, we only recite those necessary to the disposition of the case.  *See id.* at R. 47.1, 47.4.

**Holly's Issues**

In her first two issues, Holly challenges the legal and factual sufficiency of the evidence supporting the trial court's predicate findings under section 161.001(b)(1)(D) and (b)(1)(O) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (b)(1)(O). In her third and fourth issues, Holly contends that the trial court did not make required findings under section 263.002(c) of the Texas Family Code and that the evidence is legally and factually insufficient to show that termination of her parental rights was in P.W.'s best interest. *See id.* § 263.002(c).

STANDARD OF REVIEW AND APPLICABLE LAW

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002); *see also In re J.F.-G.*, 612 S.W.3d 373, 381-82 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). If multiple predicate violations are found by the factfinder, we will affirm based on any one finding because only one finding is necessary for termination of parental rights. *See In re J.S.S.*, 594 S.W.3d 493, 503 (Tex. App.—Waco 2019, pet. denied). Moreover, we give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge "of the credibility of the witnesses and the weight to give their

testimony." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

DISCUSSION

Termination under section 161.001(b)(1)(D) requires clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Subsection (b)(1)(D) requires proof of endangerment, which means to expose to loss or injury, to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). While "endanger" means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.*; *see In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (noting that it is not necessary that a parent's conduct be directed towards the child or that the child actually be injured; rather, a child is endangered when the environment creates a potential for danger which the parent is aware of but disregards). The danger to a child may be inferred from parental misconduct. *Boyd*, 727 S.W.2d at 533. Furthermore, in considering whether to terminate parental rights, the court may look at parental conduct both before and after the birth of the child. *Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Subsection (b)(1)(D) permits termination based upon only a single act or omission.

*Jordan*, 325 S.W.3d at 721 (citing *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)).

Holly is the mother of P.W., who was seven years old at the time of trial. The record reflects that Holly has a history of drug abuse, including a positive test for methamphetamine during this case. *See In re Z.C.*, 280 S.W.3d 470, 474 (Tex. App.—Fort Worth 2009, pet. denied) (stating that a parent's illegal drug use and drug-related criminal activity may support a finding that the child's surroundings endanger his physical or emotional well-being); *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied) (stating that a history of illegal drug use and drug-related criminal activity is conduct that subjects a child to a life that is uncertain and unstable, thus endangering his physical and emotional well-being); *see also In re A.F.*, No. 10-19-00335-CV, 2020 Tex. App. LEXIS 2328, at *48 (Tex. App.—Waco Mar. 19, 2020, no pet.) (mem. op.) ("A parent's continued drug use demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment for the child." (citations omitted)). Furthermore, a drug test conducted shortly after removal of the children revealed that P.W. was positive for methamphetamine.

Holly testified that she had last abused methamphetamine in February or March of 2020 and speculated that P.W. and she may have come into contact with methamphetamine when cleaning rooms at the motel where she was staying with Randall and the children. This motel is known for criminal activity and drug trafficking.

However, on cross-examination, Holly admitted that the chances of coming in contact with methamphetamine by wiping down something was "very low." Holly also admitted to Chet Break, an investigator with the Texas Department of Family and Protective Services, that she had used methamphetamine and marihuana in the past. Vicki Dixon, a conservatorship worker for Child Protective Services, testified that Holly refused thirty-nine drug test requests during this case. *See In re C.R.*, 263 S.W.3d 368, 374 (Tex. App.—Dallas 2008, no pet.) (noting that a factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs). Moreover, Holly did not know if she would test positive for drugs on the day of trial. *See In re V.V.*, 349 S.W.3d 548, 554 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (op. on reh'g) (en banc) ("Intentional criminal activity that exposes a parent to incarceration is conduct that endangers the physical and emotional well-being of a child.").

Additionally, Holly allowed P.W. to be around Randall, who admitted to using marihuana and methamphetamine in the past, who refused drug testing throughout the case, who had an extensive criminal history, and who allegedly was violent with the children. Specifically, Randall's mother, Liz, recalled that E.W. had stated that "she wants her father to quit fighting and pushing her brother [P.W.] up against the wall, like he was a man, because he didn't—he was in a bad mood one day. E.W. has been hit in the head with a can of vegetables." *See In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Domestic violence, want of self-control, and propensity for violence

may be considered as evidence of endangerment."); *see also In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied) (noting that abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child); *Ziegler v. Tarrant County Child Welfare Unit*, 680 S.W.2d 674, 678 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.) (noting that violent or abusive conduct by someone within the household is an environment that endangers children). Holly also refused to complete her family service plan. *See In re R.F.*, 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.) (considering, as part of the endangering-conduct analysis, a parent's failure to complete a service plan).

Considering the evidence in the light most favorable to the factfinder's findings and considering the evidence as a whole, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that Holly knowingly placed or knowingly allowed P.W. to remain in conditions or surroundings which endanger the physical or emotional well-being of P.W. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *see also In re J.O.A.*, 283 S.W.3d at 344-45; *In re J.F.C.*, 96 S.W.3d at 264-68; *In re J.F.-G.*, 612 S.W.3d at 381-82. Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's conclusion that Holly's parental rights to P.W. should be terminated under section 161.001(b)(1)(D) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *see also In re J.O.A.*, 283 S.W.3d at 344-45; *In re J.F.C.*, 96 S.W.3d at 264-68; *In re J.F.-G.*, 612 S.W.3d at 381-82.

And because we have found that the evidence is legally and factually sufficient as to at least one predicate act, we need not address Holly's complaint regarding subsection (b)(1)(O). *See* TEX. R. APP. P. 47.1.; *see also In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). We overrule Holly's first two issues.

In her third issue, Holly complains that the trial court failed to make findings required by section 262.002(c) of the Texas Family Code at each hearing. Specifically, Holly argues that such findings were not made in a status hearing order dated July 8, 2021, and in two permanency hearing orders filed on October 18, 2021, and February 10, 2022. Because a final order has been entered in this case, Holly's challenge to these orders is moot. *See Rafferty v. Finstat*, 903 S.W.2d 374, 378 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ("In general, temporary orders of a trial court issued during the pendency of a proceeding are superseded by the trial court's final order."); *Wright v. Wentzel*, 749 S.W.2d 228, 234 (Tex. App.—Houston [1st Dist.] 1988, no writ) (declining to address issues related to temporary orders because the trial court had entered a final order); *see also L.F. v. Dep't of Family & Protective Servs.*, Nos. 01-10-01148-CV & 01-10-01149-CV, 2012 Tex. App. LEXIS 3481, at *38 (Tex. App.—Houston [1st Dist.] May 3, 2012, pet. denied) (mem. op.) ("Because a final order has been entered in the case, appellant's complaints regarding a temporary order are moot."). We therefore overrule Holly's third issue.

In her fourth issue, Holly asserts that the evidence is legally and factually insufficient to show that termination of her parental rights is in the best interest of P.W. In determining the best interest of a child, we consider a number of factors that were outlined in the Texas Supreme Court's *Holley* opinion. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.* at 372. There is no requirement that all of the factors be proved as a condition precedent to termination, and the absence of evidence regarding some factors does not preclude a factfinder from determining that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence establishing one of the predicate grounds under section 161.001(b)(1) also may be relevant to determining the best interest of the child. *Id.* at 27-28.

The trial court heard evidence indicating that Holly and Randall engaged in substance abuse before this proceeding, and a drug test revealed that Holly continued to abuse drugs while this proceeding was pending. Evidence of a parent's past pattern of drug use is relevant not only to the stability of the home that the parents can provide, but it is relevant to the emotional and physical needs of the children now and in the future and to the emotional and physical dangers in which they could be placed now and in the future. *See Holley*, 544 S.W.2d at 371-72. As noted earlier, a parent's drug use is a condition indicative of instability in the home environment because it exposes the child

to the possibility that the parent may be impaired or imprisoned. *See In re A.M.*, 495 S.W.3d 573, 579 (Tex. App.—Houston [1st Dist.] 2016, pet denied).

The trial court also heard evidence Holly allowed Randall to be around P.W. even though Randall has abused drugs, engaged in violent behaviors with P.W. to "make him a man," and has an extensive criminal record. This is supportive of the trial court's best-interest finding relating to the emotional and physical danger to P.W. now and in the future. *See Holley*, 544 S.W.2d at 371-72; *see also In re J.I.T.P.*, 99 S.W.3d at 846 (stating domestic violence, even when the child is not the intended victim, supports a finding that termination is in the child's best interest). Also relevant to the emotional and physical danger to P.W. now and in the future is Holly's inability to keep P.W. enrolled in school. Although Randall and Holly claimed to be homeschooling P.W. and taking steps to get him enrolled in public school, Break testified that there is no evidence that Randall and Holly took any steps to enroll P.W. in school.

P.W. was seven years old at the time of the termination trial and is doing well in his placement with his older sister, E.W., with Randall's mother, Liz. P.W. has bonded with Liz's family, and Liz testified that P.W. would ask her to come and get him after Randall moved the children from Florida to Texas in April 2021. P.W. has stated that living with Liz "felt like a real home" and that he was cared for there. This is in stark contrast to P.W.'s living situation with Holly at a motel in Groesbeck, Texas, which is known for drug and criminal activity, and where E.W. and P.W. lived in a motel room by

themselves while Holly and Randall lived in a separate motel room nearby. P.W. wishes for Liz to adopt him, and Liz wants to adopt both E.W. and P.W., as indicated in her testimony and demonstrated by Liz filing suit in Florida for custody of the two children. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (stating that stability and permanence are important to the upbringing of a child and affirming a finding that termination was in the child's best interest when the child was thriving in foster care).

The record further demonstrates that Holly refused to complete her service plan because she believed that, despite her history of drug abuse and history with the Department, the removal of E.W. and P.W. was unjustified. A parent's failure to complete a family service plan may be considered in assessing whether termination was in the best interest of the child. *See, e.g., In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (recognizing that a finding that a parent failed to complete court-ordered services can be considered in support of a best-interest finding).

After viewing all of the evidence in the light most favorable to the findings regarding the best interest of the children, we conclude that the evidence was sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction that termination of the parent-child relationship between Holly and P.W. was in P.W.'s best interest. We also conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's finding that

termination of the parent-child relationship between Holly and P.W. was in P.W.'s best interest or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in P.W.'s best interest. Therefore, after considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship between Holly and P.W. was in P.W.'s best interest. We overrule Holly's fourth issue.

**Randall's Issues**

In two issues, Randall challenges the trial court's order of termination, arguing that the trial court: (1) lacked subject-matter jurisdiction under the UCCJEA because a Florida court did not properly decline its home-state jurisdiction; and (2) erroneously denied Randall's motion for mistrial because he was denied access to the courts at a critical stage of the proceedings.

THE TRIAL COURT'S JURISDICTION UNDER THE UCCJEA

In his first issue, Randall contends that the trial court lacked subject-matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") because: (1) the Texas and Florida courts denied Randall the opportunity to be heard on the issue of jurisdiction an failed to record their communications; (2) the Florida court failed to conduct a hearing as to whether Texas was the more appropriate

forum; and (3) the Florida court failed to make required findings that it was an inconvenient forum or that Texas was a more appropriate forum.

**Standard of Review**

"[S]ubject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). "[A] court cannot render a judgment concerning matters over which it lacks subject-matter jurisdiction." *In re City of Dallas*, 501 S.W.3d 71, 73 (Tex. 2016) (orig. proceeding) (per curiam) (citing *In re Doe*, 444 S.W.3d 603, 608 (Tex. 2014) (orig. proceeding)). Accordingly, a judgment rendered by a court without subject-matter jurisdiction is void. *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017).

Whether a court has subject-matter jurisdiction is a question of law. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004)). We review any statutory-construction questions involving the jurisdictional provisions of the UCCJEA de novo. *Powell v. Stover*, 165 S.W.3d 322, 324-25 (Tex. 2005) (citations omitted); *see In re Walker*, 428 S.W.3d 212, 215-16 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding).

**Facts**

In the instant case, a final judgment of paternity as to E.W. was entered on February 3, 2011, by the Eighth Judicial Circuit Court in Baker County, Florida.[2] This judgment established Randall as E.W.'s biological father and indicated that the Eighth Judicial Circuit Court in Baker County, Florida retained "jurisdiction to enforce or modify any of the other terms and provisions contained in this Consent Final Judgment upon application by either party." In May 2020, the Department received a referral regarding E.W. and P.W., and Randall decided to send the children to Florida to live with Liz. The children lived in Florida until April 2021, when Randall took the children back to Texas shortly after Liz filed suit for custody of the children in Florida.

On April 30, 2021, the Department filed its original termination petition. Thereafter, on May 14, 2021, pursuant to a request, the Texas Department of State Health Services provided statements certifying that neither E.W. nor P.W. have been the subject of a suit affecting the parent-child relationship in which a judgment was entered on or after January 1, 1974.

At the final hearing on April 25, 2022, the trial judge announced that it had spoken with the Florida court and that there was no barrier to jurisdiction. At the conclusion of the evidence the following day, the trial judge stated:

---

[2] P.W. was born in Texas, and the record does not contain a custody determination made in Florida as to P.W.

All right.  Well, I'm just going to say it.  First of all, I'm not going to issue a ruling today.  I don't think the case is appropriate for that.

And specifically, there's been a lot of testimony regarding Florida and the history in Florida that I was unaware of, and I want to re-confer with the Florida courts.  I do want to do that.  Because there's been testimony—I was under the impression, based on my conversations with the Florida court and the documents I have, it was simply a—an adjudication of paternity and a special schedule, is what the order actually says; but then there's testimony that there might have been some modification hearings and other things going on.  There's at least four different cause numbers in Florida.

And I will state for the record, I did—when I talked to the Court system in Florida, I had them run a search for not only EW, but for [Randall] and for [Stacy—E.W.'s biological mother] and they did not find anything.  But I want to confirm kind of what I've heard in testimony.  I want to make sure—that is an issue that is the biggest issue here at the moment.

Now, we're going to come back on May the 24th.  We are set for a trial.  We will do this prior to it, and we will finish this up.  At that time[,] we will have a court reporter and we will get this taken care of.

The trial judge then noted that he had already left a message with the Florida judge to confer further.

On May 23, 2022, Randall filed a pro se notice that his constitutional rights were being violated because he was told that the Limestone County Detention Center does not maintain a law library.  The next day, the trial court held a hearing and, at the conclusion of the hearing, signed an order making the following findings:

2.1.  The Eighth Judicial Court of Circuit Court in and for Baker County in the State of Florida acquired exclusive continuing jurisdiction over the child subject of this suit in Cause No. 02-2009-DR-326, *Final Judgment of Paternity*.

2.2.  Subsequently, the child, [E.W.], and her brother, [P.W.], were brought to Texas on or about April 7, 2021, at which time the Texas Trial Court exercised Temporary Emergency Jurisdiction as was necessary to protect the children from maltreatment or abuse.  Texas Family Code § 152.204.

2.3.  The children are currently placed in Florida with their paternal grandmother, [Liz].

2.4.  This Court has contacted **Judge Gloria R. Walker**, presiding judge of the Eighth Judicial Circuit Court in and for Baker County, Florida[,] to determine which State shall exercise jurisdiction over the children the subject of this.  The **Eighth Judicial Circuit Court in and for Baker County, Florida**[,] has asserted its jurisdiction over the children the subject of this suit and has determining that Texas is **not** the more appropriate forum to make a final child custody determination[.]

2.5.  A child custody determination has been made by said court as to one or both of the subject children, and the children shall be remaining in Florida.  The Texas Department of Family and Protective Services "Department" shall notify its child welfare counterparts in Florida that the Courts have conferred, and that Florida is asserting its jurisdiction over the children.

(Emphasis in original).  The trial court then ordered that the children shall remain in Liz's custody in Florida and that the case be transferred to the Eighth Judicial Circuit Court in Baker County, Florida.

On June 3, 2022, Judge Walker signed an order relinquishing jurisdiction. Specifically, the order stated that:  "to the extent Florida has continuing jurisdiction regarding the custody of the children, Florida has no intent to exercise such jurisdiction and such jurisdiction is relinquished to the state of Texas as to custody of the children."

The trial court then reconvened for the conclusion of the trial on July 14, 2022, whereby the trial court vacated his prior order transferring jurisdiction to Florida.  And

at the conclusion of the trial, the trial court signed an order terminating Randall's parental rights to both E.W. and P.W.

**Analysis**

Jurisdiction over child custody issues in Texas is governed by the UCCJEA. *See* TEX. FAM. CODE ANN. §§ 151.001-.317. Florida has also adopted the UCCJEA. *See* FLA. STAT. ANN. §§ 61.501-.542. Pursuant to the UCCJEA, the trial court that makes the "initial child custody determination" generally retains exclusive continuing jurisdiction over any future custody determinations. *See* TEX. FAM. CODE ANN. § 152.202(a); FLA. STAT. ANN. §§ 61.514-.515; *see also Saavedra v. Schmidt*, 96 S.W.3d 533, 541 (Tex. App.—Austin 2002, no pet.). As provided in section 152.102(3) of the Texas Family Code, "[c]hild custody determination" means a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child. TEX. FAM. CODE ANN. § 152.102(3); *see* FLA. STAT. ANN. § 61.503(3). "Initial determination" is defined as the first child-custody determination concerning a particular child. TEX. FAM. CODE ANN. § 152.102(8); *see* FLA. STAT. ANN. § 61.503(8). Here, the record demonstrates that the initial child-custody determination as to E.W. was made by the Eighth Judicial Circuit Court in Baker County, Florida, in its February 3, 2011, *Final Judgment of Paternity*. Accordingly, at the that time, the Florida court became the court of exclusive continuing jurisdiction as to E.W. under the UCCJEA. *See* TEX. FAM. CODE ANN. § 152.502; *see also* FLA. STAT. ANN. §§ 61.515. And absent the Florida court's relinquishment of its jurisdiction, the Texas trial

court was without jurisdiction to terminate Randall's parental rights as to E.W. *See* TEX. FAM. CODE ANN. § 152.503; FLA. STAT. ANN. § 61.515; *see also J.W. v. Tex. Dep't of Family & Protective Servs.*, No. 03-19-00260-CV, 2019 Tex. App. LEXIS 7289, at *6 (Tex. App.—Austin Aug. 20, 2019, pet. denied) (mem. op.).

However, in the absence of "exclusive continuing jurisdiction," a Texas trial court can exercise "temporary emergency jurisdiction" if the children are "present in this case" and "it is necessary in an emergency to protect the child[ren]" because they are "subjected to or threatened with mistreatment or abuse." TEX. FAM. CODE ANN. § 152.204. In this case, at the time the Department filed suit in April 2021, the record reflects that the children were present in Texas and had been subjected to or threatened with mistreatment or abuse. Thus, the evidence supports the trial court's exercise of "temporary emergency jurisdiction" under the UCCJEA. *See id.* And as such, the trial court had jurisdiction to enter temporary orders for the protection of the children. *See Saavedra*, 96 S.W.3d at 544 ("States have a *parens patriae* duty to children within their borders, and the possibility that allegations of immediate harm might be true is sufficient for a court to assume temporary emergency jurisdiction in the best interests of the child under the UCCJEA."); *see also In re C.L.B.*, No. 10-13-00203-CV, 2014 Tex. App. LEXIS 1924, at **12-19 (Tex. App.—Waco Feb. 20, 2014, no pet.) (mem. op.).

"Generally, emergency jurisdiction confers only temporary jurisdiction to prevent irreparable and immediate harm to children." *Abderholden v. Morizot*, 856 S.W.2d 829,

833-34 (Tex. App.—Austin 1993, no writ). "Absent the satisfaction of other jurisdictional prerequisites, the UCCJEA 'does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody disposition.'" *J.W.*, 2019 Tex. App. LEXIS 7289, at *7 (quoting *Abderholden*, 856 S.W.2d at 834). In this case, the jurisdictional prerequisites were satisfied. It is undisputed that the trial court conferred with the Florida court, which relinquished jurisdiction to the State of Texas. *See* TEX. FAM. CODE ANN. § 152.207. Only after the Florida court relinquished jurisdiction did the trial court proceed to terminate Randall's parental rights. *See, e.g., In re J.T.R.*, No. 13-17-00676-CV, 2018 Tex. App. LEXIS 3115, at **4-6 (Tex. App.—Corpus Christi May 3, 2018, no pet.) (mem. op.) (concluding that the trial court did not have jurisdiction to terminate parental rights because the Mississippi court had made a prior custody determination for the children and there was "no pleading or proof in the record to support a conclusion that the Mississippi court relinquished its exclusive continuing jurisdiction"). We therefore conclude that at the time the trial court rendered its judgment terminating Randall's parental rights, it had acquired jurisdiction to modify the Florida court's prior custody determination. *See* TEX. FAM. CODE ANN. § 152.203(1) (specifying the requirements for a Texas trial court to modify a prior custody determination of a court of exclusive continuing jurisdiction); *see also J.W.*, 2019 Tex. App. LEXIS 7289, at **8-9; *In re C.L.B.*, 2014 Tex. App. LEXIS 1924, at **12-19.

Despite the foregoing, Randall contends that: (1) the Texas and Florida courts denied him the opportunity to be heard, *see* TEX. FAM. CODE ANN. § 152.110(c); FLA. STAT. ANN. §§ 61.511, 61.518; (2) the Texas and Florida courts failed to record their communications., *see* TEX. FAM. CODE ANN. § 152.110(f); FLA. STAT. ANN. § 61.511; (3) the Florida court failed to hold a hearing or receive evidence regarding jurisdiction, *see* TEX. FAM. CODE ANN. § 152.207; FLA. STAT. ANN. § 61.520; and (4) the Florida court failed to find that Texas was a more appropriate forum. *See* TEX. FAM. CODE ANN. § 152.207; *see also* FLA. STAT. ANN. § 61.520.

Randall does not cite any relevant authority for the proposition that a violation of the above procedural requirements prevented the trial court from acquiring subject-matter jurisdiction, and we have found none. *See, e.g., In re J.P.*, 598 S.W.3d 789, 799 (Tex. App.—Fort Worth 2020, pet. denied) ("Section 152.110 is a procedural rather than a jurisdictional statute."); *see Monk v. Pomberg*, 263 S.W.3d 199, 206 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("Because the matter was not brought to the trial court by motion or the request of another court, Lisa has not complied with the procedural requirements in section 152.207 of the Family Code."). Although the trial court did not comply fully with the above procedural requirements, the record reflects that the trial court conferred with the Florida court and obtained an order from the Florida court declining to exercise jurisdiction; provided notice to the parties of its conversations with the Florida court; and held a hearing where jurisdiction was addressed.

Under similar circumstances, other courts have concluded that the trial court substantially complied with the essential procedural requirements of the UCCJEA and fully satisfied the central goals of the Act. *See J.W.*, 2019 Tex. App. LEXIS 7289, at *10 (concluding that the trial court substantially complied with the essential procedural requirements of the UCCJEA where the trial court conferred with the Nevada court and obtained an order from the Nevada court declining to exercise jurisdiction; provided notice to the parties of the conversations with the Nevada court; held a hearing on the mother's plea to the jurisdiction; and allowed the parties to submit briefing on the issue before making a final decision on jurisdiction); *In re A.A.G.*, No. 04-20-00585-CV, 2021 Tex. App. LEXIS 5981, at *10 (Tex. App.—San Antonio July 28, 2021, no pet.) (mem. op.) ("Because the record establishes that the trial court conferred with the Minnesota court, and that the Minnesota court relinquished its exclusive continuing jurisdiction, the trial court properly assumed jurisdiction over the children and had subject matter jurisdiction to render its final order terminating M.E.'s parental rights." (citation omitted)); *see also In re Cristian I*, 224 Cal. App. 4th 1088, 1099, 169 Cal. Rptr. 3d 265 (Cal. Ct. App. 2014). Therefore, we conclude that any error in the trial court's procedures were harmless. *See J.W.*, 2019 Tex. App. LEXIS 7289, at *10, *see also In re Cristian I*, 224 Cal. App. 4th at 1099.

Additionally, we note that Randall did not raise these complaints in the trial court below, although he had the opportunity to do so at the April 25, April 26, and May 24 hearings. Thus, Randall has waived any error in the trial court's procedure. *See* TEX. R.

APP. P. 33.1(a)(1); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) (concluding that the failure to raise a due-process claim in the trial court waives the complaint on appeal); *see also J.W.*, 2019 Tex. App. LEXIS 7289, at **10-11 (concluding that father waived his complaints regarding the procedural requirements of the UCCJEA by failing to object in the trial court); *Belmonte v. Belmonte*, No. 09-07-225-CV, 2008 Tex. App. LEXIS 3503, at *11 (Tex. App.—Beaumont May 15, 2008, no pet.) (mem. op.) (concluding that by failing to object to the trial court's failure to have its conversation with the New York court recorded, the parties waived error).

And with respect to Randall's complaints regarding the actions of the Florida court, we note that this Court does not have jurisdiction to entertain such complaints and that Randall waived these complaints by not objecting in the trial court. *See* TEX. R. APP. P. 33.1(a)(1); *Dreyer*, 871 S.W.2d at 698; *see also In re A.R.C.*, 2020 Tex. App. LEXIS 1846, at *13-14 (Tex. App.—San Antonio Mar. 4, 2020, no pet.) (mem. op.) ("We decline to review the evidence regarding the convenience of the forum because, as previously stated, that determination was for the Florida court to make. . . . Any review of the Florida court's determinations that it retains exclusive, continuing jurisdiction and that Texas is not a more convenient forum must be pursued in the Florida courts." (internal citation omitted)); *In re J.W.*, 2019 Tex. App. LEXIS 7289, at **10-11. We overrule Randall's first issue.

RANDALL'S MOTION FOR MISTRIAL

In his second issue, Randall asserts that the trial court abused its discretion by denying his motion for mistrial because he was denied access to a law library despite numerous requests.

We review the trial court's ruling on a motion for mistrial for an abuse of discretion. *Schlafly v. Schlafly*, 33 S.W.3d 863, 868 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see Tex. Turnpike Auth. v. McCraw*, 458 S.W.2d 911, 913 (Tex. 1970). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)).

As stated earlier, on May 23, 2022, Randall filed a pro se notice that his constitutional rights were being violated because he was told that the Limestone County Detention Center does not maintain a law library. Further, at the July 14, 2022 continuation of trial, Randall orally moved for a mistrial, arguing that the lack of access to the law library prevented him from presenting his request for habeas-corpus relief to have his children immediately released back to him.

A review of the record shows that Randall filed his application for writ of habeas corpus prior to his incarceration and that this filing, as well as his May 23, 2022 pro se notice, contain citations to case law and the Texas Constitution. Moreover, Randall elected to represent himself and did not articulate what information that he was deprived

of and how it would have been useful to his habeas application or his May 23, 2022 pro se notice. Furthermore, Randall's argument is that jail officials deprived him of his constitutional rights by not allowing him access to a law library. Yet, Randall took no action against jail officials, and Randall admitted in his May 23, 2022 pro se notice that jail officials told him that whatever information he sought could be obtained by other means that Randall apparently did not explore.

Based on the foregoing, we cannot say that the trial court abused its discretion by denying Randall's motion for mistrial. We overrule Randall's second issue.

## Conclusion

Having overruled all of Holly and Randall's issues on appeal, we affirm the judgment of the trial court.


STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson,
     and Justice Smith
Affirmed
(Chief Justice Gray concurring with a note)*
Opinion delivered and filed January 4, 2023
[CV06]



*(Chief Justice Gray concurs in the Court's judgment. A separate opinion will not issue.)